Hart, J.
 

 The sole question presented is whether, under the facts above stated, machinery, equipment and supplies, purchased by the appellant for the performance of its contract with the power company and upon which purchases the taxes in question were assessed, were used or consumed directly in the production for sale.of coal by mining, as the word, “sale,” is used and defined in Section 5546-1, General Code.
 

 If appellant produced coal for sale by mining, within the meaning of the Sales and Use Tax Acts, then there is no sales or use tax assessable on the purchase of the machinery, equipment and supplies used and consumed by appellant directly in so producing and mining such coal because, in such case, the tax statutes expressly except from taxation the purchase of such machinery, equipment and supplies.
 

 Section 5546-1, General Code, defines the term, “retail sale,” and sets forth the tax exception claimed in this case. The excepting portion of the statute is as follows:
 

 “ ‘Retail sale’ and ‘sales at retail’ include
 
 all
 
 sales
 
 excepting
 
 those in which the purpose of the consumer
 
 is* * * to use
 
 or
 
 consume
 
 the
 
 thing transferred directly
 
 
 *240
 

 in the production of tangible personal property for sale by *
 
 * *
 
 mining
 
 including * * * the extraction from the earth of all substances which are classed geologically as minerals * * (Italics supplied.)
 

 Since a similar provision in Section 5546-25, General Code, excepts like transactions from use-tax assessments, it will not be necessary, in this opinion, to further refer to that tax.
 

 The crux of the controversy in this case is the interpretation to be given to the term, “sale,” as used in the sales-tax statute and as applied to the delivery to the power company of the coal produced by mining. If the transaction does not constitute a “sale” of the coal
 
 as defined by the statute,
 
 there is no exception from the tax on the purchase of the machinery, equipment and supplies used and, consumed in the production and delivery of the coal to the power company. Whether the appellant was engaged in mining coal
 
 for sale
 
 depends upon the language of a part of Section 5546-1, General Code, and its proper interpretation. The pertinent part of the section defining a sale is as follows:
 

 ‘‘
 
 1 Sale
 
 ’ and ‘selling ’
 
 include all transactions whereby
 
 title or
 
 possession,
 
 or both,
 
 of tangible personal property, is
 
 or is to be
 
 transferred
 
 * * * for
 
 a consideration in any manner,
 
 whether absolutely or conditionally, * * * and by any means whatsoever; and
 
 includes the production
 
 or fabrication
 
 of tangible personal property for a consideration for consumers who furnish
 
 * * *
 
 the materials used in the production
 
 or •fabrication
 
 worlc
 
 * * (Italics supplied.)
 

 ¡ The Board of Tax Appeals affirmed the assessments and found that there was no exception from taxes on the grounds that the transactions involving the purchase of the machinery, equipment and supplies which were used and consumed in the mining and delivery of the power company’s own coal to it, did not transfer
 
 *241
 
 any title to the power company; that the appellant was not given such possession of the coal as is contemplated by the statute; and that the transactions therefore did not constitute a “sale” under the terms of the statute. The appellant admits that the coal produced and prepared by it was not sold to the power company in a manner within the usually accepted meaning of the word, “sale,” where title passes to the. transferee, but contends that the definition of the term, “sale,” clearly includes the transactions of appellant in mining and delivering possession of the coal to the power company for a price, in connection with which the tax in this case was assessed on the purchase of machinery, equipment and supplies used and consumed in the mining and the production of the coal; and that the decision of the Board of Tax Appeals was unlawful.
 

 It is a well settled principle of law that where a statute defines terms used therein, which are applicable to the subject matter affected‘by the legislation, such definition controls in the application of the statute. 59 Corpus Juris, 1040, Section 617. See
 
 Wray’s Pharmacy, Inc.,
 
 v.
 
 Lee,
 
 145 Fla., 435, 199 So., 767;
 
 Bradley Supply Co.
 
 v.
 
 Ames, Jr., Dir.,
 
 359 Ill., 162, 194 N. E., 272;
 
 Blauner’s, Inc.,
 
 v.
 
 Philadelphia,
 
 330 Pa., 342, 198 A., 889;
 
 W. J. Sandberg Co.
 
 v.
 
 Iowa State Board of Assessment and Review,
 
 225 Iowa, 103, 278 N. W., 643; 139 A. L. R., 373.
 

 Therefore, under the statute, a “sale” to be subject to tax does not necessarily require a transfer of title from a seller to a purchaser, but includes all transactions whereby possession of tangible personal property is transferred for a consideration in any manner and by any means whatsoever and includes (after the production for a price or consideration of tangible personal property) the delivery of possession of such property by the producer to a consumer thereof, even
 
 *242
 
 though such consumer has, in the first instance, furnished to the producer either directly or indirectly the-materials necessary for such production.
 

 This construction of the statute is in harmony with' the construction given it by the Department of Taxation as reflected in Rule 38 adopted by the department,, which rule relates to “production and fabrication.” As applicable in the instant case, the rule reads as-follows :
 

 “The definition of ‘sale’ and ‘selling’ includes the production or fabrication of tangible personal property * * * for a consideration. Any change in the form, or substance of tangible personal property so as to-create a new article of tangible personal property, or any substantial alteration of the form or shape of am existing article of tangible personal property, wherein, the material is furnished by either party, shall constitute a production or fabrication under the provisions-of this rule. Such production or fabrication charges-are sales and are subject to the tax. * # *
 

 “Examples of charges on which the tax is based are: A printing charge by a printer for the printing of printed matter, whether the stock or other material is-furnished by the consumer or by the printer; a tailoring charge for the tailoring of a suit, whether the cloth, is furnished by the tailor or the consumer; a charge for-the fabrication of steel, regardless of who furnishes-the steel to be fabricated * *
 

 This leads us first to consider whether there was a production of tangible personal property by appellant from
 
 materials
 
 furnished by the power company.. Clearly there was a production of coal by mining. Section 5546-1, General Code, refers to and recognizes the-“production” of coal by mining. However, the Tax Commissioner contends that the power company did not furnish the “materials used” in such production,, within the meaning of the statute; that it did not fur
 
 *243
 
 nish “tangible personal property” but real estate in the nature of coal in place; and that real estate cannot he regarded as “materials used.”
 

 We think that such interpretation lacks rationality .and reasonableness and is too limited for practical .application.
 

 Although the power company owned the land upon which the coal was located, the contract between the power company and the appellant to mine, crush and load the coal on cars provided for a severance of the coal from the land or real estate and, to all intents and purposes, effected a constructive severance from the real estate.
 

 Although land and minerals in place upon or beneath the land are real property even though separately owned, the minerals become personal property immediately upon severance.
 
 Ross, Aud.,
 
 v.
 
 Short Creek Coal Co.,
 
 117 Ohio St., 599, 159 N. E., 583; 36 American Jurisprudence, 286, Section 8; 42 American Jurisprudence, 210, Section 30. The appellant was ■employed not only to effect the severance of the coal from the land but to transport the coal and convert It into crushed coal for the use and convenience of the power company.
 

 The word, “materials,” is not defined by the statute. It is defined by Webster as “the substance * * * ■of which anything is composed or may be made.” It is defined by the Century dictionary as “consisting of ■matter; of a physical nature; component or contribuiory matter or substance; that of or with which any corporeal thing is or may be constituted, made, or •done; as, the materials of the soil or of disintegrated ■rocks.”
 

 The “materials” from which tangible personal property is produced depends upon the character of the •personal property so produced. In other words, the •only “materials” from which crushed coal can be pro
 
 *244
 
 duced is the raw material represented by coal in place. The basis for the contention of the Tax Commissioner would be eliminated if the coal had been simply loosened from its position, even though it still lay in the pit. It seems to the court that this claimed difference is fictitious and unworthy of consideration as-affecting the rights of the parties or as affecting the-taxing power of the state. To hold that “materials” may not arise from earth-formed substances would be to say that standing trees which are cut and from which lumber is sawed are not “materials” from which tangible personal property in the form of lumber can be produced; or that raw petroleum taken from the earth is not “materials” from which tangible personal property in the form of petroleum products can be produced by refining; or that iron ore in place is not “materials” from which tangible personal property in the form of iron and steel can be produced; or that clay mined from the ground is not “materials” from which tangible personal property in the form of bricks or building materials can be produced. The very fact that the same statute which defines a “sale” for tax purposes excepts from such tax a sale of articles used and consumed in the “production of tangible personal property for sale by * * * mining including * * * the extraction from the earth of all substances which are classed geologically as minerals” is constructive evidence of a legislative intent to include minerals in place as materials from which such production of tangible personal property for sale maybe made.
 

 In the second place, the Tax Commissioner contends-that there was no such transfer of possession of the-coal from the appellant to the power company, as is contemplated by the statute, in order to satisfy the statutory definition of “sale.” This contention is-based largely on the fact that the ownership of the-
 
 *245
 
 coal was at al] times in the power company. However, when materials are placed by the owner in the hands of another to produce or fabricate a new and different product for the owner, all the transfer of possession necessary as an element of “sale” under the statute is the return of the property in its new form enhanced by increment and in value and made suitable for the purposes of the owner. The adequacy of such a transfer of possession was recognized by the Department of Taxation in the illustrations appended to Rule 38 and hereinbefore quoted.
 

 The Board of Tax Appeals cited and relied upon the case of
 
 Piper
 
 v.
 
 Glander, Tax Commr.,
 
 149 Ohio St., 109, 77 N. E. (2d), 714. In that case the court was concerned with a tax assessed upon the purchase of articles used in the chilling, cutting up and freezing, of meat and its storage in lockers rented by the owners of the meat. The court held that the cutting of' the meat in proper cuts before placing it in the storage-lockers did not constitute a production or fabrication, of tangible personal property and. therefore did not constitute a “sale” of the meat under the statute.. There was'no change in “the form or substance of tangible persona] property so as to create a new article of tangible personal property, or any substantial alteration of the form or shape of an existing article of tangible personal property” necessary to constitute a “sale” for tax purposes as suggested by Rule 38,. above quoted. In other words, the locker-storage-operation was not a production or fabrication of property but a mere processing or service operation incidental to the business. In such respect that case is to-be distinguished from the case at bar.
 

 In the opinion of this court the transactions between-the power company and the appellant constituted a “sale” of tangible personal property, under the statute, subject to the sales tax to the extent of the in
 
 *246
 
 •crement or enhanced value of the coal by the operations of the appellant, unless otherwise excepted, and •since the transactions constitute a “sale,” the purchase of the machinery, equipment and supplies used .and consumed by the appellant in the production of the coal by mining is excepted from the sales and use faxes.
 

 Ordinarily and usually, to be excepted from the sales fax, the purchase of tangible personal property used •and consumed in the production of other tangible personal property for sale must be of such property used, •consumed and incorporated into and made a constituent part of the personal property so produced for ■sale. However, in this case that is not required because of the special exception of the purchase •of property used and consumed “directly in the production of tangible personal property for ■sale by * * * mining including * * * the extracfion from the earth of all substances which are classed geologically as minerals * * See Section 5546-1 and paragraph 11, Section 5546-2, General Code;
 
 Bailey
 
 v.
 
 Evatt, Tax Commr.,
 
 142 Ohio St., 616, 53 N. E. (2d), 812;
 
 France Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 143 Ohio St., 455, 55 N. E. (2d), 652;
 
 Dye Coal Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 144 Ohio St., 233, 58 N. E. (2d), 653.
 

 The decision of the Board of Tax Appeals is reversed, and judgment is entered in favor of the appellant.
 

 Decision reversed.
 

 Matthias, Stewart and Turner, JJ., concur.
 

 Weygandt, C. J., and Zimmerman, J., dissent.