Turner, J.
 

 Under our supervisory jurisdiction it is our duty to determine whether the decision of the Board of Tax Appeals appealed from is reasonable and lawful or unreasonable or unlawful.
 

 
 *523
 
 As we are of the opinion that the decision in this case is controlled by the Conservancy Act of Ohio and that the certificate of the Tax Commissioner of Ohio fixing the value of the general personal and real property of a railroad for taxation has no place here, we shall omit discussing the many statutes applicable to the Tax Commissioner’s powers and duties but shall refer only to Section 5425, General Code, which provides :
 

 “The property of such public utilities to be so assessed by the commission shall he all the property thereof, as defined in section forty-three [Section 5419, General Code] of this act.”
 

 In this connection, however, the commissioner must keep in mind Sections 5429 and 5430, General Code, relative to the valuation of utility property.
 

 On the other hand, the “property” to be assessed under the Conservancy Act is defined in Section 6828-1, General Code.
 

 Therefore, the questions of collateral attack, estoppel, the method of railroad assessment other than under the Conservancy Act of Ohio, and the composition of the public utility duplicate are immaterial.
 

 Turning now to the merits of the case: The railroad company challenges the constitutionality of the statute, Section 6828-1, General Code, and especially as fco the interpretation thereof.
 

 The word “property” as used in the district’s resolution levying the assessment is defined in Section 6828-1, General Code, a part of the Conservancy Act of Ohio. The word “person” is also defined in the same section. As to the term “person” the section provides:
 

 ‘ ‘ Wherever the term ‘ person ’ is used in this chapter and not otherwise specified, it shall be taken to mean person, firm, copartnership, association or corpora
 
 *524
 
 tion, other than county, township, city, village, or other political subdivision. ’ ’
 

 As to the term “property” as used in the Conservancy District’s resolution of assessment, it is defined in that section as follows:
 

 “Wherever the terms ‘land’ or ‘property’ arg used in this chapter they shall, unless otherwise specified, be held to mean real property, as the words ‘real property’ are used in. and defined by the laws of the state of Ohio, and shall embrace all railroads, tram-roads, roads, electric railroads, street and interurban railroads, streets and street improvements, telephone, telegraph, and transmission lines, gas, sewerage and water systems, pipe lines and rights of way of public service corporations, and all other real property whether public or private. ’ ’
 

 “Property” is again defined in Section 6602-34, General Code, in the identical words used to define “propei'ty” in Section 6828-1, General Code. As we are to use the definition of “property” to be applied to action taken under the Conservancy Act of Ohio, it will be unnecessary to set' out other definitions.
 

 Section 6828-43, General Code, reads in part as follows:
 

 “As soon as any district shall have been organized under this chapter, and a board of directors shall have been appointed and qualified, such board of directors shall have the power and authority to levy upon the property of the district in each of not more than two years a preliminary tax of not to exceed three-tenths of a mill on the assessed valuation thereof at a level rate to be used for the purpose of paying expenses of organization, for surveys and plans, and for other incidental expenses which may be necessary up to the time money is received from the sale of bonds or otherwise. This tax shall be certified to the auditors of
 
 *525
 
 the various counties and hy them to the respective treasurers of their counties. * * * The collection of such tax levy shall conform in all matters to the provisions of the General Code governing the collection of taxes and assessments levied by local taxing districts, and the same provisions concerning the nonpayment of taxes shall apply.”
 

 The Scioto-Sandusky Conservancy District passed (February 15, 1947) the following resolution:
 

 “Whereas, the Scioto-Sandusky Conservancy District was duly organized under and by virtue of Chapter 11 of Title III of Part Second of the General Code of Ohio, known as ‘The Conservancy Act of Ohio,’ by action of the Scioto-Sandusky Conservancy Court under date of December 4, 1934; and
 

 “Whereas, E. F. Bearce, Joseph Vanmeter and A. J. Allman constitute the duly qualified and acting-board of directors of the Scioto-Sandusky Conservancy District; and
 

 “Whereas, it is the desire of the board of directors to prepare and file an official plan, as provided in G. C. 6828-12, and to proceed under said official plan to fulfill the purposes for which said Conservancy District was created and organized, including, among' other things, the creation and maintenance of recreational facilities in connection with all flood protection and water conservation projects created within the boundaries of said district; and
 

 “Whereas, no assessment has been made upon the property of .the district as provided and contemplated in G. C. 6828-43 for the purpose of creating a fund for paying the expenses of organization, for surveys and plans and for other necessary expenses;
 

 “Now, therefore, be it resolved by the directors of the Scioto-Sandusky Conservancy District, by and under the authority vested in them by law, and par
 
 *526
 
 tieularly by Section 6828-43 of the General Code of the state of Ohio, acting for and in behalf of said district, that there is hereby levied upon all of the real property within the boundary of said Scioto-Sandusky Conservancy District, including all railroads, tram-roads, roads, electric railroads, street and interurban railroads, streets and street improvements, telephone, telegraph and transmission lines, gas, sewerage and water systems, pipe lines and rights of way of public service corporations, both public and private, an assessment of three-tenths of a mill on the assessed valuation of said property, to be collected in one year and to be used for the purpose of paying expenses of organization, for surveys and plans and for other incidental expenses which may be necessary up to the time money is received from the sale of bonds, or otherwise;
 

 “Resolved further, that said assessment be ordered, computed, certified, levied and extended upon the tax duplicate and collected by the same officers, in the same manner and at the same time as taxes for general purposes are certified or extended and collected and that the secretary of the district be and he is hereby ordered and directed to certify a copy of this resolution to the auditors of the counties embraced in the district, together with instructions to said auditors to add said assessment to the tax duplicates of their respective counties for the tax year 1947, and to certify said assessment to the respective treasurers of said counties, and to take such other steps as may be necessary and requisite to cause the assessment to be levied by the appropriate county officers at the earliest available time;
 

 “Be it further resolved that the president and secretary of the Scioto-Sandusky Conservancy District be and they are hereby authorized to pledge the receipts from the assessment herein levied to any bank,
 
 *527
 
 banks or other financial institutions, in consideration of a loan or loans from such bank, banks, or financial institutions, in an amount up to seventy-five (75) per cent of the unencumbered proceeds derived or derivable from said preliminary tax assessment, hereby authorizing said president and secretary, in the name and on behalf of said Scioto-Sandusky Conservancy District to bind said district in all respects in connection with said loan, as provided by law and particularly by the provisions of Section 6828-43 and 6828-44, and to do any and all other things necessary and proper to carry out the provisions of said Conservancy Act with reference to borrowing money and issuing notes and giving security therefor; and
 

 “Be it further resolved that all assessments, the collection of which has been anticipated by the issuance of a note or notes, shall, when collected, to the full extent necessary to pay the principal and interest of such note or notes, be paid into the note and bond retirement fund for the purpose of paying the principal and interest of the above note or notes, and for no other purpose whatsoever.
 

 “On motion of Mr. Allman, seconded by Mr. Van-meter, this resolution was adopted as read.”
 

 Section 5609, Ceneral Code, provides in part:
 

 ‘ ‘ Complaint against any valuation or assessment as the same appears upon the tax duplicate of the then current year, may be filed on or before the time limited for payment of taxes for the first half year, or at any time during which taxes are received by a county treasurer, without penalty for the first half year. Any taxpayer may file such complaint as to the valuation or assessment of his own or another’s real property * * *
 
 ?}
 

 The railroad company filed the following complaint, with the Fayette County Board of Bevision:
 

 
 *528
 
 “Your complainant, The Baltimore & Ohio Railroad Company respectfully represents:
 

 “That it is the owner of the property situated in Fayette county and the taxing districts thereof, which is set out in detail in a statement attached hereto and made part hereof, marked exhibit ‘A,’ and that said property is entered on the current tax duplicate of public utility property in said county in the name of The Baltimore & Ohio Railroad Company;
 

 “That the value shown for said property on said tax duplicate is an apportionment of the unit value of all of the property of complainant in the state of Ohio as determined and apportioned by the Tax Commissioner of Ohio pursuant to law;
 

 ‘ ‘ That the total value of property so apportioned to Fayette county and the taxing districts thereof, and entered on the current tax duplicate of public utility property in said county is in the amount of $1,401,250; that of the total value so apportioned to Fayette county and the taxing districts thereof, the value of personal propery is included in the amount of $1,331,450; that of the total value so apportioned to Fayette county and the taxing districts thereof, the appraised value of real estate used in operation and buildings and structures included therein is in the amount of $69,800; that for the purposes of the assessment levied at the rate of three-tenths of a mill for the Seioto-Sandusky Conservancy District, the value of complainant’s property as aforesaid should not exceed the amount of $69,800; that the assessment for said Seioto-Sandusky Conservancy District has been levied on an illegal and excessive valuation amounting to $1,331,450.
 

 ‘ ‘ That a payment of $21.55 has been tendered by complainant to the county treasurer of Fayette county for the assessment for said Seioto-Sandusky Conservancy District extended against a value of $71,770
 
 *529
 
 (which amount includes the appraised value of real estate used in operation and buildings and structures in the amount of $69,800, as above set out, and also the appraised value of real estate not used in operation in the amount of $1,970, as to which last mentioned valuation complainant does not now complain).
 

 “That your complainant is aggrieved by the inclusion of the value of personal property in the valuation of the property of complainant against which the assessment for the purposes of the Scioto-Sandusky Conservancy District has been extended, said assessment being applicable only to the real property of complainant located in said district.
 

 “Your complainant, therefore, prays that for the purposes of the Scioto-Sandusky Conservancy District said valuation be corrected and reduced to the value of real estate used in operation and buildings and structures, as above set out, and that said assessment for said district be reduced accordingly, and for such other relief as it may be entitled to in the premises.
 

 “Notice of hearing on this complaint deposited in the post office to the address given, twenty (20) days prior to such hearing, in which notice the property may be described as herein set forth, shall be deemed reasonable notice, and any other or further notice is hereby waived.
 

 “The Baltimore & Ohio Railroad Company
 

 “By Harry Garmer,
 

 ‘ ‘ Tax Agent. ’ ’
 

 The board of revision made the following finding:
 

 “This day the board of revision came on to consider the complaint of The Baltimore & Ohio Railroad Co., Baltimore 1, Md., filed February 19, 1948, against the classification of the real and personal property on the auditor’s 1947 duplicate, which the value of real estate used in operation as being in the amount of
 
 *530
 
 $1,401,250. Of the amount so charged, the complaint states that $1,331,450 is personal property and $69,800 is real property.
 

 ‘ ‘ The board being fully advised in the premises, set Thursday, March 25, 1948 at 10 o’clock, at the office of the Common Pleas Court, Washington C. H., Ohio as the time and place of hearing on said complaint and so notified the tax agent of the Baltimore & Ohio Railroad Co., Baltimore, Md.”
 

 On October 4, 1948, the county board of revision met in special session and adopted the following resolution:
 

 “In the matter of the complaint against the valuation for the Scioto-Sandusky Conservancy District assessment, filed February 19, 1948, by The Baltimore & Ohio Railroad Co., Baltimore, Md., in which said railroad company claimed that of their total valuation of $1,401,250, as certified to the auditor of Fayette county by the Department of Taxation for assessment purposes, is [in] fact $1,331,450 personal property and $69,800 is real estate. The board having no means of determining whether or not there is any real property included in the amount claimed as being personal property, and said railroad company offered no conclusive evidence to substantiate their claim at the hearing held April 26, 1948, we, therefore, reject the complaint of said Baltimore
 
 &
 
 Ohio Railroad Company. ’ ’
 

 The first question to be decided is that of jurisdiction raised by appellant.
 

 Both before the Board of Tax Appeals and here, appellant, Scioto-Sandusky Conservancy District, challenged the jurisdiction of the Board of Tax Appeals and that of the Fayette County Board of Revision to entertain the railroad company’s complaint, on the ground that there was no complaint of the railroad company (1) as to the valuation of its real estate or
 
 *531
 
 (2) as to a classification whereby the county auditor or any other taxing authority had considered certain property to be real estate, whereas, the railroad company believed that it was personal property.
 

 In the case of
 
 Standard Oil Co.
 
 v.
 
 Zangerle, Aud.,
 
 133 Ohio St., 33, 11 N. E. (2d), 242, it was held in paragraph one of the syllabus as follows:
 

 “Where a complaint filed under Section 5609, General Code (108 Ohio Laws, pt. 1, 560), sets forth that real estate has been overvalued or illegally valued because personal property has been improperly included in the valuation as real estate, the county board of revision, on hearing the complaint, and the Tax Commission of Ohio, on appeal, have power to classify the property in determining the true value of the real estate and may exclude from the valuation so much of the property as, under the law and the evidence, is found to be personal property.”
 

 In the case of
 
 State, ex rel. Scioto-Sandusky Conservancy District,
 
 v.
 
 Dunn et al., Bd. of Rev.,
 
 149 Ohio St., 507, 80 N. E. (2d), 120, it was held in the syllabus thereof:
 

 “Writ of prohibition will not issue to prevent a board of revision from considering complaints of owners of real property on' the ground that the value of personal property is or may be included in the valuation or assessment of which complaint is made.
 
 (Standard Oil Co.
 
 v.
 
 Zangerle, County Aud.,
 
 133 Ohio St., 33, approved and followed.)”
 

 Under the foregoing cases and the citation of statutory authority following immediately, this assignment of error should be and hereby is overruled.
 

 Under Section 5609, General Code, any taxpayer may file a complaint as to the valuation or assessment of his own or another’s real property.
 

 Under Section 5610, General Code, an appeal from
 
 *532
 
 the decision of a county board of revision may be taken to the Board of Tax Appeals by any of the persons authorized by Section 5609, General Code, to file complaints against the valuation or assessments with the county auditor, within 30 days after the notice of the decision of the board of revision is mailed as provided in Section 5609-1, General Code. (An alternative method of appeal from the decision of a county board of revision is provided in Section 5611-4, General Code.)
 

 In Section 5611-1, General Code, it is provided in part:
 

 “In the case of an appeal from a decision of a county board of revision the Board of Tax Appeals shall ascertain and determine the true value in money of the property, the valuation or assessment of which as determined by the county board of revision is complained of, and shall determine the liability of the property for taxation, if that question is in issue * # *.
 

 “The decisions of the Board of Tax Appeals may affirm, reverse, vacate or modify the tax assessments, valuations, determinations, findings, computations or orders complained of in the appeals or applications determined by it and its decisions shall become final and conclusive for the current year, unless reversed, vacated, or modified as in Section 5611-2 of the General Code of Ohio provided.”
 

 Section 5548, General Code, provides in part:
 

 “Each county is made the unit for assessing real estate for taxation purposes. The county auditor, in addition to his other duties, shall be thé assessor for all the real estate in his county for purposes of taxation, provided that nothing herein shall affect the power conferred upon the Tax Commissioner of Ohio in the matter of the valuation and assessment of the property of any public utility. ’ ’
 

 We are of the opinion that there is no discrimination
 
 *533
 
 called for under the foregoing definition and that the assessment was meant to and does cover all the items of property set
 
 out
 
 in the foregoing definition contained in Section 6828-1, General Code. We are of the opinion that Section 6828-1, General Code, is constitutional and that neither the inclusion nor assessing of the items specified as embraced renders the act unconstitutional. See generally the case of
 
 County of Miami
 
 v.
 
 City of Dayton,
 
 92 Ohio St., 215, 110 N. E., 726.
 

 The assessing resolution of the conservancy district follows the wording of the statute as to the property on which the levy was made.
 

 The following citations from syllabi of cases recently decided by this court will illustrate our conclusion as to the definition of “property.”
 

 In the case of
 
 Terteling Bros., Inc.,
 
 v.
 
 Glander, Tax Commr.,
 
 151 Ohio St., 236, 85 N. E. (2d), 379, it was held in the first paragraph of the syllabus:
 

 “Where a statute defines terms used therein which are applicable to the subject matter affected by the legislation, such definition controls in the application of the statute.”
 

 In the case of
 
 State, ex rel. Foster,
 
 v.
 
 Evatt, Tax Commr.,
 
 144 Ohio St., 65, 56 N. E. (2d), 265, it was held in the seventh and eighth paragraphs of the syllabus as follows:
 

 “7. Courts have no legislative authority and should not make their office of expounding statutes a cloak for supplying something omitted from an act by the General Assembly. The question is not what did the General Assembly intend to enact, but what is the meaning of that which it did enact.
 
 (Slingluff
 
 v.
 
 Weaver,
 
 66 Ohio St., 621, approved and followed.)
 

 “8. There is no authority under any rule of statutory construction to add to, enlarge, supply, expand,
 
 *534
 
 extend or improve the provisions of the statute to meet a situation not provided for.”
 

 In the case of
 
 Wachendorf
 
 v.
 
 Shaver, Recorder,
 
 149 Ohio St., 231, 78 N. E. (2d), 370, it was held in paragraph five of the syllabus:
 

 “The court must look to the statute itself to determine legislative intent, and if such intent is clearly expressed therein, the statute may not be restricted, •constricted, qualified, narrowed, enlarged or abridged; significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act, and in the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the •connection in which they are used. ’ ’
 

 It was the finding of the Board of Tax Appeals “that the auditor’s act and the board of revision’s order of affirmance thereof were collateral attacks upon the Tax Commissioner’s orders of assessment and certification of appellant’s property made under date •of October 30,1947; and that they were as unwarranted as a collateral attack upon a judgment of a court of law or a decision in equity.” (We have already decided above that the question of collateral attack upon the commissioner’s certification, et cetera, has no place in this case.)
 

 Continuing the board’s finding:
 

 “It also finds that the extending of the conservancy assessment against the appellant’s property other than real estate would and does create an illegal assessment and is'contrary to law;” (as we have shown above, the assessment was authorized upon the “property” as defined in Section 6828-1, G-eneral Code).
 

 Continuing the quotation from the finding of the Board of Tax Appeals:
 

 
 *535
 
 “* * * and that the county auditor exceeded his authority in extending the assessment beyond the appellant’s real property to which it is limited by Gr. C. Sections 6828-1 and 6828-43 of the conservancy act.” (This finding embraces a misunderstanding of the fact that the assessment was levied upon the company’s property which included its real property and all of the other items enumerated in the definition of “property” in Section 6828-1 of the conservancy act.)
 

 The finding continues:
 

 “It is also found that the board of revision erred, as a matter of law, in its failure to promptly find that the conservancy assessment had been unlawfully extended against appellant’s property other than real.” (In this part of the finding we would agree with the finding of the board if the words “other than real” had been omitted.)
 

 Continuing the quotation from the board’s finding:
 

 “It is found that appellant has just cause for complaint, and it is considered that the order appealed from, in so far as it is complained of, be, and the same is hereby, reversed and vacated and expunged from the special assessment roll of Fayette county, as is also the act of the auditor in extending the assessment against appellant’s property other than realty.” (To the extent set out in our foregoing opinion, we agree with this portion of the Board of Tax Appeals’ entry.)
 

 The board’s entry then continues:
 

 “If it were necessary at this time to consider the merits of the controversy as considered by the appellees, by which is- meant the proper classification of appellant’s property herein disputed as to whether it be real or personal for the purpose of the conservancy assessment, this board would be compelled to find and hold, under authority of [citing cases and statutes], that appellant’s roadbed, ties, rails, switches, side
 
 *536
 
 tracks, control towers, bridges, culverts, telephone and telegraph lines are items of personal property and not operational real property upon which the Conservancy District preliminary assessment may not be extended. ’ ’ (Notwithstanding its disclaimer, we are of the opinion that the board did pass upon, partially at least, the question of classification. We do not agree with the foregoing position of the Board of Tax Appeals’ finding, for the reason that what is to be assessed must follow the resolution of the conservancy district which m turn follows the definition of “property” as used in Section 6828-1, General Code.)
 

 In the proceeding before the Board of Tax Appeals the controversy centered around the Tax Commissioner’s certificate, with one side claiming that the certificate was unassailable for the reason that a collateral attack was being made upon it, while the other side maintained the contrary. We are of the opinion that this was a wrong approach.
 

 The conservancy act itself points out just what property may be assessed, whether it be called real or personal. While upon complaint to the county board of revision of the valuation of real property, it was proper for the county board to classify 'property as between that described in Section 6828-1, General Code, and property not there described, we do not agree with the Board of Tax Appeals that the power of assessment in the instant case is conferred on the Tax Commissioner by Sections 5419 and 5423, General Code. The power to assess in the instant case is conferred by Section 6828-43, General Code, on the board of directors of the particular district and the property to be assessed is limited to the “property” as defined in Section 6828-1, General Code. The county auditor is the instrumentality of the conservancy district by which the valuations of the items in Section 6828-1,
 
 *537
 
 General Code, are to be extended and the other matters of assessment are pnt into the proper channel for collection.
 

 The conservancy district’s resolution provided for the assessment of the property within the district, as defined in Section 6828-1, General Code, irrespective of the ownership.
 

 This court upon hearing, and consideration of the record and evidence is of the opinion that the decision of the Board of Tax Appeals appealed from herein is both unreasonable and unlawful.
 

 Therefore, such decision of the Board of Tax Appeals is reversed and this case is hereby remanded to the Board of Tax Appeals with instruction to determine the true value in money of the “property” of appellee, The Baltimore & Ohio Railroad Company, to be assessed according to law under the resolution of the board of directors of the Scioto-Sandusky Conservancy District passed at a meeting held on the 15th day of February, 1947, and certified by Allen L. Pretzman, secretary. (See Sections 5597 and 5611-1, General Code.)
 

 Decision reversed and cause remanded.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart and Tart, JJ., concur.