PLASTIC SURGERY ASSOCIATES, INC., APPELLANT, *v.*
OHIO DEPARTMENT OF INSURANCE ET AL., APPELLEES.

[Cite as Plastic Surgery Assoc., Inc. *v.* Ohio Dept. of Ins. (1988),
40 Ohio St. 3d 401.]

(No. 87-1968—Submitted November 1, 1988—Decided December 30, 1988.)

*Horn & Horn, Roy H. Horn* and *Ralph D. Horn,* for appellant.

*Cogswell & Wehrle, Stephen P. Samuels, Price, Berry & Shoemaker* and *Kevin L. Shoemaker,* for appellees.

For the reasons stated by the court of appeals in *Plastic Surgery Assoc., Inc.* v. *Ohio Dept. of Ins.* (Sept. 22, 1987), Franklin App. No. 86AP-1036, unreported, the judgment is hereby affirmed.

MOYER, C.J., SWEENEY, LOCHER, HOLMES and H. BROWN, JJ., concur.

DOUGLAS, J., concurs separately.

WRIGHT, J., dissents.

DOUGLAS, J., concurring. I concur with the majority that the judgment of the court of appeals should be affirmed. I write separately only to note, with irony, the facts from which this case arose.

In 1975, the Ohio General Assembly hastily enacted Am. Sub. H.B. No. 682 (136 Ohio Laws, Part II, 2809) as its response to a perceived medical malpractice "crisis." This legislation, enacted and effective approximately three months after its introduction, was in response to pressure from doctors, hospitals, insurance companies and the public. Part of the legislation was designed to assist physicians to obtain medical malpractice insurance. R.C. 3929.72 created the Joint Underwriting Association ("JUA") with authority to write medical malpractice liability insurance policies. R.C. 3929.74 established the Stabilization Reserve Fund ("SRF"), the purpose of which was to provide a reserve against severe underwriting losses. All malpractice policyholders, whether insured through the JUA or through private companies, were required to contribute to the SRF. If losses and expenses exceeded by more than one million dollars the premiums collected by the JUA plus the charges collected by the SRF, all insurers would be required to pay, no more than once a year, a surcharge to the SRF based upon a per-capita rate for doctor policyholders and a graduated rate depending on bed capacity for hospital policyholders.

By 1979, just four and one-half years later, the SRF had accumulated an amount in excess of that necessary to insure the liabilities of the JUA. Consequently, the General Assembly, in Am. S.B. No. 271 (138 Ohio Laws, Part I, 925-926), amended R.C. 3929.74(G) (formerly [H]) to provide

for the *return* of the excess moneys to the doctors and hospitals that had made contributions to the fund. The legislation provided that if the SRF exceeded ten million dollars, any excess funds were to be returned to the contributors. Pursuant to this legislation, and Ohio Adm. Code 3901-1-37 promulgated by the Superintendent of Insurance, approximately twenty-four million dollars was returned to the physicians and hospitals who were the policyholders obligated to contribute to the SRF in accordance with R.C. 3929.74(C) and (D).

Because the premiums paid the JUA were sufficient to cover the risk insured by the association, *no* claim has ever been made against the SRF. Hence the return of the substantial excess funds was mandated by the General Assembly, since there has never been a draw against the SRF.

The debate continues yet today as to whether there really was or is a medical malpractice "crisis" or a tort litigation "crisis." As these matters are considered by the General Assembly and this court, it is my hope that we will keep in mind this useful lesson for future reference when yet other "crises" in these fields are presented to us for resolution.

WRIGHT, J., dissenting. The court of appeals' decision which the majority follows today adopts a statutory construction which, in my view, is not warranted. I would follow the definition of "physician" which is controlling in R.C. Chapter 3929 and use the everyday meaning of "contribution" to mean actual payment of insurance premiums, as opposed to equating contribution to the obligation to obtain malpractice insurance.

In 1979, R.C. 3929.74(G) (formerly [H]) was amended to effectuate return of the excess monies in the Stabilization Reserve Fund. (138 Ohio Laws, Part I, 925-926.) The Department of Insurance promulgated Ohio Adm. Code 3901-1-37, pursuant to R.C. Chapter 119, to establish the process to be used to refund the monies. The rule *expressly* incorporated the definitions set forth in R.C. 3929.71 to 3929.85. R.C. 3929.71, the definitional section, specifically incorporated the definition of a "physician" set forth in R.C. 2305.11(D)(2) as follows:

" 'Physician' means any person who is licensed to practice medicine and surgery or osteopathic medicine and surgery by the state medical board."

However, in establishing the Joint Underwriting Association in 1975, the General Assembly provided another definition for "physician" in R.C. 3929.73, which deals with applications for medical malpractice insurance:

" * * * *For the purposes of this chapter* 'physician' means any person authorized to practice medicine or surgery, osteopathic medicine and surgery, or podiatric medicine and surgery under the provisions of Chapter 4731. of the Revised Code *or a partnership or professional corporation composed of such persons.* Such application * * * may be made on behalf of a number of eligible applicants who are members of a medical society." (Emphasis added.) R.C. 3929.73(A)(1).

The plaintiff fits into the above-emphasized definition of "physician" in R.C. 3929.73(A)(1). R.C. 3929.74(G), as amended, provides, in part:

" * * * [T]he superintendent shall, on or before September 1, 1980, cause the return of such excess fund moneys to the *physicians and hospitals that have contributed* to the fund and that are not association policyholders at the end of the fiscal year." (Emphasis added.)

The General Assembly *did not* ask the Superintendent to return monies to the individually insured physicians.

It could have easily done so. Most of the statutes in R.C. Title 39 employ the term "insured" to refer to an individual who is covered by a policy of insurance. "Policyholder," one of the terms at issue here, is not synonymous with the term "insured," since a policyholder may own a policy of insurance whether or not it is the insured. For example, in R.C. Chapter 3923, dealing with sickness and accident insurance, R.C. 3929.03(C) provides that the head of the family is considered the policyholder, but that coverage nevertheless can be provided to other members of the family. Indeed, the maximum-charge-per-physician language of R.C. 3929.74(C) suggests that a corporation such as the plaintiff can be the policyholder, although its individual members are the insured parties. Likewise, R.C. 3917.03 provides that the employer or trustee of a trust fund is considered the policyholder in group life insurance policies.

The majority concludes that the individually insured physicians are the contributors and policyholders who are entitled to a refund, even though they did not pay the premiums, and that somehow they have "borne the ultimate expense of any charges, surcharges, or premium increments imposed under sections 3929.71 to 3929.85 of the Revised Code." Section 4(B) of Am. Sub. H.B. No. 682 (136 Ohio Laws, Part II, 2841-2842), as amended by Section 1 of Am. S.B. No. 299 (137 Ohio Laws, Part I, 935), and by Section 1 of Am. S.B. No. 271 (138 Ohio Laws, Part I, 926-927).

The majority uses the language in Section 4(B) to explain the meaning of the language in R.C. 3929.74(C), one of the statutes at issue. However, continuing in that vein, Section 4(A) of Am. Sub. H.B. No. 682, as amended, clearly equates "the ultimate expense," *i.e.*, the "contribution," with the cost of premiums: "[A]ny assessment imposed under section 3929.75 of the Revised Code to the insurers who have collected such assessment, such return to be reflected, to the advantage of the policyholders who have borne the ultimate expense of the assessment, *in the premium structure* of such insurers." (Emphasis added.)

It is a well-settled principle of law that "[w]here a statute defines terms used therein which are applicable to the subject matter affected by the legislation, such definition controls in the application of the statute." *Terteling Bros., Inc.* v. *Glander* (1949), 151 Ohio St. 236, 39 O.O. 60, 85 N.E. 2d 379, paragraph one of the syllabus. The General Assembly specifically made the definition of "physician" in R.C. 3929.73(A)(1) applicable to the *entire* chapter and it presumably was aware of that definition when it amended R.C. 3929.74(G).

The plaintiff's position does not create an incongruous result; it is certainly no more incongruous than giving a refund to someone who never paid in monies in the first place. It is physicians, corporate or otherwise, and hospitals that have the obligation to obtain malpractice insurance. R.C. Chapter 3929 was established to make that possible. If a party is a physician and pays the premium for coverage, then that party should be entitled to the refund.

The words chosen by the General Assembly in the applicable statutes clearly contemplate return of monies to corporate physicians that paid the insurance premiums on behalf of their physician employees. Rather than sending semaphoric language to the parties and courts that presumably the plaintiff will have a cause of action against the individual physicians who were unjustly enriched by the refunds for premiums that they did not pay,

this court should follow the definition of "physician" that is *controlling* in R.C. Chapter 3929 and the everyday meanings of "contribution" and "policyholder," and require the Ohio Department of Insurance to make a refund to the plaintiff subject to proof that the plaintiff did indeed pay premiums for its physician employees. The Department of Insurance can then assume the burden of seeking return of the erroneously disbursed refunds.

Accordingly, I would reverse the judgment of the court of appeals and remand this cause to the Court of Claims for further proceedings.