OPINIONS OF THE SUPREME COURT OF OHIO
**** SUBJECT TO FURTHER EDITING ****

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Loctite Corporation, Appellee, v. Tracy, Tax Commr., Appellant.
[Cite as Loctite Corp. v. Tracy (1994), Ohio St.3d .]
Taxation -- Sales and use tax -- Purchases of color separation negatives and chromolin proofs used in creatging artwork and text on blister-card packs are not exempt from taxation under the packaging exception of R.C. 5739.02(B)(15).
Only those items that are essential to the restraining of movement of the goods to be sold are exempt from taxation under the packaging exception of R.C. 5739.02(B)(15).
(No. 93-2511 -- Submitted November 2, 1994 -- Decided December 23, 1994.)
Appeal from the Board of Tax Appeals, No. 91-K-1078.
Loctite is a manufacturer of chemical adhesives and sealants. These products are generally sold in tubes, which are packaged in blister-card packs. A blister-card pack consists of a card to which the product is secured by a clear plastic bubble or blister. Printed on the card is various information, including illustrations or photographs, instructions, warnings, UPCs and trademarks.

The marketing process begins when Loctite's in-house graphics design department creates a prototype of the proposed blister card; the design is approved; black and white camera-ready artwork is prepared; and color specifications are determined. The prototype card and color specifications are then sent to outside vendors who produce color separation negatives representing each primary color and black. Using the color separation negatives, the vendors create a chromolin proof, which is an exact visual representation of the blister card design. Upon Loctite's approval of the chromolin proof, the color separation negatives are sent to a packaging manufacturer which prints the various information onto the actual blister cards used for packaging.

The Tax Commissioner assessed Loctite for sales and use taxes, for the audit period January 1, 1985 through June 30,

1988, on its purchases of the color separation negatives and chromolin proofs used in creating the artwork and text on the cards. Loctite appealed the assessment to the Board of Tax Appeals ("BTA"). Finding the items contributed to the creation of the package and were, therefore, "materials" for packages, the BTA exempted the items under R.C. 5739.02(B)(15) and reversed the assessment order. The cause is now before this court upon an appeal as of right.

Jones, Day, Reavis & Pogue and Roger F. Day, for appellee.
Lee Fisher, Attorney General, and Steven L. Zisser, Assistant Attorney General, for appellant.

Moyer, C.J.     The issue presented is whether purchased items used to design and create a prototype that do not become a part of a package are "materials" within the meaning of the sales tax exemption for packages under R.C. 5739.02(B)(15).1 Because these items are not an essential part of the packages used to hold the product, they are not exempt from taxation.

During the relevant audit period, R.C. 5739.02(B)(15), which exempts from sales taxes a manufacturer's purchase of packages, provided:

"(B) The tax does not apply to the following:

"***

"(15) Sales to persons engaged in any of the activities mentioned in division (E)(2) of section 5739.01 of the Revised Code, of packages, including material and parts therefor, and of machinery, equipment, and material for use in packaging tangible personal property produced for sale, or sold at retail. Packages include bags, baskets, cartons, crates, boxes, cans, bottles, bindings, wrappings, and other similar devices and containers and 'packaging' means placing therein." (Emphasis added.)  (140 Ohio Laws, Part I, 832.)

In National Tube Co. v. Glander (1952), 157 Ohio St. 407, 47 O.O. 313, 105 N.E.2d 648, paragraphs one and two of the syllabus, we announced the principles for interpreting the sales and use tax statutes. First, "the presumption obtains that every sale or use of tangible personal property in this state is taxable." Second, "[s]tatutes relating to exemption or exception from taxation are to be strictly construed, and one claiming such exemption or exception must affirmatively establish his right thereto." It is against these principles that we review the case before us.

It is undisputed that Loctite is engaged in an activity mentioned in R.C. 5739.01(E)(2). Moreover, both parties agree that the blister-card packs themselves are exempt "packages" under R.C. 5739.02(B)(15). The issue is whether Loctite's purchases of the color separation negatives and chromolins used in creating the prototype blister card are exempt from taxation as "material" used for its packages.

"Material" is not defined by R.C. Chapter 5739. However, in Terteling Bros., Inc. v. Glander (1949), 151 Ohio St. 236, 39 O.O. 60, 85 N.E.2d 379, paragraph three of the syllabus, we held that:

"'Materials' furnished to a producer for the production of tangible personal property for 'sale,' *** may be any matter of a physical nature of or from which any corporeal thing is

constituted and made, and depends upon the character of the personal property so produced. ***"2 (Emphasis added.)

To be considered a "constituent" of or from which the tangible personal property is made, the purchased item must be "an essential part" that serves to form, compose, or make up the property produced. Webster's Third New International Dictionary (1986) 486. Moreover, the character of the final product determines whether an item is essential so as to be considered an exempt "material" under R.C. 5739.02(B)(15).

In the case at bar, the personal property produced was the blister-card packages. One of the defining characteristics of a package is that it must "restrain the movement of the packaged object in more than one plane of direction." Custom Beverage Packers v. Kosydar (1973), 33 Ohio St.2d 68, 73, 62 O.O.2d 417, 419, 294 N.E.2d 672, 675. See, also, Cole National Corp. v. Collins (1976), 46 Ohio St.2d 336, 338, 75 O.O.2d 396, 397, 348 N.E.2d 708, 709. Applying the precedent of earlier cases it is clear that only those items that are essential to the restraining of movement of the goods to be sold are exempt under the packaging exception of R.C. 5739.02(B)(15). The cards and plastic blisters are exempt because they perform the exempt function of a package. The color separation negatives and chromolins are not exempt because they do not constitute or make up the property serving that function.

The plain language of R.C. 5739.02(B)(15) supports that conclusion. The first sentence of the statute includes, within the exemption, the material and parts for packages. But the last sentence of the statute, which cites examples of packages, indicates that only material and parts that serve the essential purpose of the package are exempt. Excluded from the examples is any suggestion of materials use to produce any information appearing on the package. We discern from the words chosen by the General Assembly an intent to except only those packages, materials and parts that restrain the packaged product.

Loctite argues that we should follow our decision in Federated Dept. Stores, Inc. v. Limbach (1989), 42 Ohio St.3d 34, 536 N.E.2d 1165, in which we held that the materials used to produce camera-ready copy for printing advertising that describes and prices items for sale are exempt under R.C. 5739.01(O).3 Federated Dept. Stores is easily distinguishable from the present case. Although the assessed items here are similar to those in Federated Dept. Stores, the tax exemption sought by Loctite is different. In Federated Dept. Stores, the assessed items were essential to the creation of printed advertising matter that priced and described items for retail sale, thus fulfilling the purpose of the printed matter exception provided by R.C. 5739.01(O). The exception to taxation granted in R.C. 5739.01(O) is less restrictive than that granted in R.C. 5739.02(B)(15), and the assessed items in this case are not essential to the purpose of the package. The purpose of the color separation negatives and chromolins at issue is to copy information onto the exempt package. While the information may be useful for marketing purposes, it is in no way necessary or relevant for the function of the package.

We agree with the conclusion of the BTA that the color separation negatives and chromolin proofs are necessary in creating the product information that appears on the blister

cards.  We disagree, however, with the suggestion that these items in any way further the purpose of the blister-card package in restricting the movement of the product so as to fall under the packaging exemption of R.C. 5739.02(B)(15). Loctite's primary economic purpose for these items was to facilitate the marketing of its products, not the packaging of them.

For the foregoing reasons we concclude there was insufficient probative evidence for the BTA to conclude that the purchase of the color separation negatives and chromolins are excepted from taxation pursuant to R.C. 5739.02(B)(15). Therefore, the decision of the BTA is reversed.

Decision reversed.

A.W. Sweeney, Douglas, Wright and Resnick, JJ., concur.

F.E. Sweeney and Pfeifer, JJ., dissent and would affirm the Board of Tax Appeals.

FOOTNOTES:

1 Because R.C. 5741.02(C)(2) renders sales tax exceptions applicable to the use tax, discussion will be limited to the sales tax.

2 Although Terteling Bros., Inc. involved a review of the predecessor to R.C. 5739.01, we find it helpful in our review of R.C. 5739.02, which is a stricter statute.

3 This statute, formerly R.C. 5739.01(O), provides:

"'Making retail sales' means the effecting of transactions wherein one party is obligated to pay the price and the other party is obligated to provide a service or to transfer title to or possession of the item sold, but it does not include the delivery of items thereafter nor the preliminary acts of promoting or soliciting the retail sales, other than the distribution of printed matter which displays or describes and prices the item offered for sale."  (140 Ohio Laws, Part II, 4783.)