Stewart, J.
 

 The first two pages of the argument in appellant’s brief are concerned with the assertion that the instant case involves a potential refund liability of the state of Ohio of a large sum of money, and the inference seems to be that our. judgment should be influenced by that fact. That argument has no persuasive force whatsoever. There is only one question for solution in the instant case.
 

 Section 5546-2, General Code, provides that “an excise tax is hereby levied on each retail sale made in this state of tangible personal property * #
 

 Section 5546-1 defines “retail sale” and “sales at retail” and provides that they “include all sales excepting those in which the purpose of the consumer is * * * to use or consume the thing transferred directly in the production of tangible personal property for sale by * * * processing # *
 

 There can be no question that the product of appellee was processed for sale. Appellee sold its product direct to its customers except that portion of the pro
 
 *500
 
 duct which it used in reference to its state road-paving contracts, in all of which there was a provision for a separation of price, that is, so much for materials and so much for labor and other considerations.
 

 With reference to such use, Section 5546-1, G-eneral Code, provides:
 

 “A construction contract, pursuant to which tangible personal property is or is to be incorporated into a structure or improvement on and becoming a part of real property shall, if the consideration for such incorporation is agreed upon, charged or paid separately from the consideration for the performance of the other obligations of such construction contract, constitute a sale of such tangible personal property for the purpose of this act. ”
 

 The sole question, therefore, is: Was the Wayne crane of appellee used or consumed directly in the production of tangible personal property for sale by processing? If it was, appellee is not liable for the sales tax assessed by appellant and the decision of the Board of Tax Appeals must be affirmed. If the crane was not so used or consumed, appellee is liable for the assessment and the decision of the Board of Tax Appeals must be reversed.
 

 The Board of Tax Appeals was of the opinion that “the crane * * * was used directly in performing an act or a species of acts upon the material used to transform or reduce it to a definite state or thing and was, therefore, used directly in processing. ’ ’
 

 The board was also of the opinion that “the crane in question had a direct connection with the production and marketing of asphaltic concrete; it was used in operations necessary for making the concrete marketable in accordance with the requirements of * * * [appellee’s] customers.’’ The board therefore found “that the crane in question was used directly in the
 
 *501
 
 production of tangible personal property by processing for sale and, therefore, the purchase thereof was not . taxable under the sales tax act. ’ ’
 

 The basis of the decision of the Board of Tax Appeals was the fact that in order to produce appellee’s product it was essential to transport the ingredients to bins located in the portable mixer. Such a line of reasoning would except from taxation the sales of practically all instrumentalities for transportation used by manufacturers or processers of products.
 

 It is difficult to conceive of products the processing of which does not require the transportation of ingredients to the place of processing as well as transportation of the finished products from the place of processing to customers or places of use. In either case, such transportation is essential to the production of or use of the processed or manufactured article. In fact, there are few things around the office or plant of a manufacturing concern which cannot be considered essential to the processing or manufacture of articles produced; Thai is true of typewriters, office desks and all other paraphernalia with which modern business is conducted, and, yet, it could hardly be claimed that the sales of such articles are excepted from taxation.
 

 When the General Assembly excepted from taxation the sales of those things which were to be used or consumed directly in the production of tangible personal property for sale by processing, it had in mind only such articles as had a direct part in the processing. Sales of instrumentalities of transportation and other articles or things which are necessary to carry on the business of processing, but which themselves have no part directly in the production, were not excepted. In fact, it has often been argued, although it is not essential to discuss that point in the instant case, that there is an exception from taxation of sales of only
 
 *502
 
 those things which are entirely used up or consumed in the processing and which cannot again be used.
 

 As essential as instrumentalities of transportation are to the manufacture and processing of articles, those instrumentalities do not directly enter into the processing where they simply transport the ingredients used in the processing to the place where the processing begins, or transport the finished products from their place of processing or manufacturing to their place of use.
 

 In
 
 Saunders Mills, Inc.,
 
 v.
 
 Evatt, Tax Commr.,
 
 139 Ohio St., 227, 39 N. E. (2d), 526, the syllabus reads:
 

 “Motor trucks purchased in Ohio for employment solely in transporting agricultural produce, over the public roads from the place where grown on lands leased by the purchaser to establishments owned by the purchaser, where such produce is to be converted into a manufactured product, are subject to the Ohio sales tax, not being used
 
 directly
 
 in the production of tangible personal property for sale by manufacturing, processing or farming, within the meaning of the words of exemption contained in Section 5546-1, General Code.”
 

 In the
 
 Saunders case
 
 the court approved the view of the Board of Tax Appeals “that the trucks were subject to the excise tax imposed by law, since they were used exclusively in
 
 transporting
 
 the alfalfa hay from the fields to the dehydrating plants, over the public roads, and were not engaged in actually sowing, drilling, cultivating or harvesting the hay or in converting it into a manufactured product * * *.”
 

 In the instant case the crane was used exclusively in transporting the sand and slag from the cars or stock piles to the bins in the portable mixer and the crane was not engaged in converting the ingredients into a processed product.
 

 
 *503
 
 It is true that in the
 
 Saunders case
 
 the trucks went long distances, over public roads, from the processor’s fields to its plants and engaged in a horizontal transportation, whereas in the instant case the crane was on the processor’s premises and was engaged in a vertical transportation, but since the functions of the trucks in the
 
 Saunders case
 
 and the crane in the instant case were solely transportation, there is no difference in the principles involved in both cases.
 

 The Board of Tax Appeals in the instant case relied strongly upon the case of
 
 France Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 143 Ohio St., 455, 55 N. E. (2d), 652, the syllabus of which reads:
 

 “Sales of tangible personal property used and consumed in operations consisting of transporting crushed-stone products from a stone crushing and screening plant to yards adjacent thereto, and of draining, cleaning, blending and reassembling such products to comply with the required specifications of the purchasing trade before they are available and ready for market and sale, are sales of personal property used and consumed directly in the production by processing of tangible personal property for sale and are, under the provisions of Sections 5546-1 and 5546-25, General Code, exempt from state sales and use taxes.”
 

 It is true that the property the sales of which were found excepted from taxation in the
 
 France case
 
 were instrumentalities of transportation which, after stone had been quarried, removed the screened stone to the yards of the processor, but the majority opinion was to the effect that after the transportation of the screened stone something further had to be done to it before it was fully processed for sale. In other words, the material partially processed was transported to another location where further processing was
 
 *504
 
 required, and, as a result, the instrumentality of transportation was used directly in the production of tangible personal property for sale by processing.
 

 In the case of
 
 Dye Coal Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 144 Ohio St., 233, 58 N. E. (2d), 653, the fifth paragraph of the syllabus reads:
 

 “Automobile trucks purchased by a mining company to be used exclusively to haul coal from the excavation or pits, following its extraction from the earth, to a tipple where the coal is cleaned and graded for shipment, are used in mining within the provisions of Section 5546-1, General Code.”
 

 In the
 
 Dye case,
 
 Judge Matthias stated in the opinion:
 

 “It should be kept in mind that the trucks of the appellant involved in the instant case were purchased to be and are in fact used to transport coal from the mine to the tipple and for no other purpose. Their use, therefore, is limited to the production of coal.”
 

 In other words, the logic of the
 
 Dye case
 
 is that the mining of coal is not finished when the coal is removed from the mine. The coal must be transported to a tipple where further processing is performed before it is ready for the market. The instrumentalities of such a transportation are used directly in the mining or the production of tangible personal property for sale by processing.
 

 The distinction which this court has logically drawn in reference to transportation instrumentalities is that if such instrumentalities are used solely to transport materials to the point of processing, or to transport them from the place of processing after that has been fully completed, they are not used directly in the production of the processed property, whereas if such instrumentalities are used solely to transport partially processed materials to another location where the proc
 
 *505
 
 essing is continued or completed by the same processor, they are used directly in the production of the processed property.
 

 In the case of
 
 Fyr-Fyter Co.
 
 v.
 
 Glander, Tax Commr.,
 
 150 Ohio St., 118, 80 N. E. (2d), 776, the syllabus reads:
 

 “1. The exception in the definition of ‘retail sale’ and ‘sales at retail’ in Section 5546-1, General Code (a part of the Sales Tax Act), and in the definition of ‘use’ in Section 5546-25, General Code (a part of the Use Tax Act), of such sales or use of tangible personal property to be used or consumed ‘directly in the production of tangible personal property for sale by * * * mining,’ includes the sale or use of only those items which are indispensable in mining and does not include items which are merely convenient or facilitative.
 

 “2. The fact that certain items of tangible personal property are required by law in mines or mining operations does not in and of itself exempt or except from taxation the sale or use of such items for such purpose.”
 

 Certainly if sales of articles which are required by law to be used in connection with mining or other processing, and without which, under the law, the processing could not be carried on, are not necessarily excepted from taxation, the sale of an instrumentality of transportation which merely transports ingredients used in processing to the place where the processing begins, and has no part in the processing itself, is not so excepted.
 

 The decision of the Board of Tax Appeals, being unreasonable and unlawful, is reversed and the order of appellant is affirmed.
 

 Decision reversed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Turner and Taft, JJ., concur.