99 N.E.2d 649 (1951)
155 Ohio St. 511
CROWELL-COLLIER PUB. CO.
v.
GLANDER, Tax Com'r.
McCALL CORP.
v.
GLANDER, Tax Com'r.
Nos. 32479 and 32480.
Supreme Court of Ohio.
June 6, 1951.
*650 Corry, Durfey, Martin & Browne, Springfield, for Crowell-Collier Publishing Company.
Coolidge, Becker, Wall & Wood, Dayton, for McCall Corp.
*651 C. William O'Neill, Atty. Gen., and Robert E. Leach, Columbus, for appellee.
HART, Judge.
The sole question involved in the first branch of the appeal in case No. 32479 and in the appeal in case No. 32480 is whether the purchase by the appellants of self-addressed envelopes to be enclosed with mailed packages of printed advertising material for the return of subscriptions to appellants' magazines and the purchase of container envelopes used to enclose and to carry in the mail such self-addressed envelopes and packages of printed advertising material to potential subscribers are subject to taxation.
The positions of the appellants and the Tax Commissioner on this issue are stated in the entry of the Board of Tax Appeals in case No. 32480, as follows: "Appellant considers that assessment of these two items is erroneous, unreasonable, unlawful and discriminatory; and that the container envelope is the instrumentality of achieving the end of making a retail sale of its magazines; and that the self-addressed return envelope facilitates payment as a container for the subscriber's check, which is an essential component of a retail sale, and hence both are used directly in making retail sales. Appellee insists that since these envelopes do not bear advertising matter, that the sales thereof to the appellant are taxable sales, which are not excepted or exempted by the statute or any rule of the Tax Commissioner."
The position of the Board of Tax Appeals is stated in such entry, as follows: "Is the making of a sale at retail one and the same thing as the solicitation of retail sales by advertising? The making of a retail sale accompanied by a customer's invoice or sales slip is a written memorandum of a consummated transaction. Such an invoice or slip is a supply directly used in consummating a retail sale; while appellant's container envelope and its enclosures are but the means of soliciting a retail sale, a hoped for future transaction, far oftener not accomplished than accomplished."
These appeals involve Sections 5546-1 and 5546-2, General Code, and certain rules adopted by the Tax Commissioner.
The pertinent parts of Section 5546-1, General Code, are as follows: "`Retail sale' and `sales at retail' include all sales excepting those in which the purpose of the consumer is * * * to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing, processing, refining, mining * * * or directly in making retail sales * * *."
Pertinent parts of Rule 43 promulgated by the Tax Commissioner are as follows:
"Sales of tangible personal property which is to be used or consumed directly in the operation of making retail sales are not subject to the tax.
"Sales falling within this exempt classification include only * * * supplies and equipment used to price and describe merchandise; supplies and equipment used in consummating retail sales * * *."
Pertinent parts of Rule 103 promulgated by the Tax Commissioner are as follows:
"All sales by printers * * * are taxable unless exempted in the classifications that follow:
"1. Where the purpose of the purchaser is to use or consume the printed matter directly in the production of tangible personal property for sale by manufacturing, processing * * *.
"2. Where the purpose of the purchaser is to use or consume the printed matter directly in making retail sales.
"* * *
"The sales or use tax must be collected from or paid by such manufacturer, wholesaler, or distributor, even though the advertising matter is distributed by a retailer of his products. There are two exceptions to the application of the tax to such purchaser.
"* * *
"Second: Where the manufacturer, wholesaler, or jobber is making retail sales as defined by Section 5546-1, General Code, of a part or all of his manufactured products, he may purchase advertising matter *652 which is used exclusively in promoting such retail sales free of the tax."
The court is called upon to determine whether the purchase of the envelopes used in mailing solicitations was the purchase of envelopes used directly in making retail sales, or whether the purchase of the envelopes constituted the purchase of "advertising matter" used exclusively in promoting such retail sales. If the envelopes were purchased and used for either purpose their purchase is excepted from the tax.
It is undisputed that the envelopes in question are used solely in the solicitation of sales of magazines at retail. Significantly, no claim is made that the purchase of the promotional advertising material enclosed with the envelopes is taxable. Clearly, the purchase of such advertising material is excepted. In our view the envelopes bearing the identification of the appellants in connection with the advertising material, either giving the names of the magazines or the names of the appellants, are so closely related to the advertising material itself as to constitute them an integral part of the promotional advertising packages.
Doubtless, if there were some brief "sales talk" presented on the envelopes themselves, no question would be made as to the nontaxability of their sale to the appellants. In the opinion of the court such a distinction is too slight to warrant a different result in determining the exceptibility of these sales from taxation. Under the spirit of the statute, such sales of property for the purpose for which it is used are excepted.
The second branch of the appeal in case No. 32479 relates to a use tax assessed on the sale of the Lamson conveyer. The solution of this problem depends upon the facts and the application of the provisions of Section 5546-25, General Code, and of Tax Commissioner's Rule 39. The pertinent part of Rule 39 is as follows:
"The tax shall apply to the sale of all items that are to be used in `administration' and `distribution,' but it shall not apply to sales of any items to be used exclusively in `production' for sale.
"In manufacturing it shall be presumed that all items used exclusively in the production line and exclusively in what is commonly known as `the shop' are used directly in production. * * *
"Offices which are located in `the shop,' the `processing room,' and the `refining room,' which are placed there for the purpose of expediting the production and which have no connection with the administration of the factory, processing plant, or refinery, are deemed to be a part of `production' and items used therein may be purchased without payment of the tax.
"The presumption that all items used exclusively in `the shop,' the `processing room,' or the `refining room' are used directly in production is not conclusive.
"A purchaser buying articles which will be placed in a producing room, but which have no connection with production shall pay the tax. The presumption is a guide and as a general rule it will prevail and will be rebutted only where the item purchased has no direct connection with producing tangible personal property for sale."
Here, it is the claim of Crowell that "because of the tremendous volume of the production, the manufacturing process is not complete until the magazines are transported to the freight cars or other transportation vehicles, inasmuch as they cannot be brought to rest even for temporary storage or loading facilities"; and that "in this particular business and in this particular plant, actually distribution does not begin and manufacturing process does not end until the magazines are placed in the cars or other transportation vehicles."
The record discloses that this conveyer operates from a very large mailing room on the second floor, where the magazines are assembled, bound, bundled and labeled, directly to the railroad cars and other transportation vehicles which are located on the first floor within the plant of Crowell.
*653 The Tax Commissioner relies, in support of his position, on the case of Tri-State Asphalt Corp. v. Glander, Tax Com'r, 152 Ohio St. 497, 90 N.E.2d 366, wherein it was held: "Boom and bucket cranes the sole function of which is the conveying of ingredients to a place of processing, and which have no part in the actual processing itself, are not used or consumed directly in the production of tangible personal property for sale by processing and, under Section 5546-1, General Code, their sales are not excepted from taxation."
Here, the magazines are completely printed, addressed, bundled and packaged when the conveyer picks them up and delivers them to railroad cars and trucks on the first floor. The conveyer renders no functional service in the course of processing them. Production is completed when the conveyer picks them up. Its purchase is clearly subject to the use tax.
The decisions of the Board of Tax Appeals are reversed as to the purchase of the envelopes and its decision in case No. 32479 is affirmed as to the use tax on the sale of the Lamson conveyer.
Judgment accordingly.
WEYGANDT, C. J., and ZIMMERMAN, STEWART and MATTHIAS, JJ., concur.
MIDDLETON, Judge.
I concur in the judgment so far as it reverses as to the tax on the sale of the envelopes in both cases, but dissent from the judgment in case No. 32479 as to the tax on the sale of the Lamson conveyer.
TAFT, Judge (concurring).
I concur in the judgment for the reasons stated in my concurring opinion in Jackson Iron & Steel Co. v. Glander, Tax Com'r, 154 Ohio St. 369, 374, 96 N.E.2d 21, and in my dissenting opinion in Terteling Bros., Inc., v. Glander, Tax Com'r, 151 Ohio St. 236, 246, 85 N.E.2d 379.