Taft, J.,
dissenting. In recent years, this court *448 has been, required to determine whether, in numerous diverse factual situations, “the purpose of the consumer” was “to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing, processing * * * mining * * * farming, agriculture, * * *; or directly in making retail sales or directly in the rendition of a public utility service; * * * or to use or consume the thing directly in industrial cleaning of tangible personal property,” within the meaning of those words as set forth in Section 5546-1, General Code. See, for example, Saunders Mills, Inc., v. Evatt, Tax Commr., 139 Ohio St., 227, 39 N. E. (2d), 526; Bailey v. Evatt, Tax Commr., 142 Ohio St., 616, 53 N. E. (2d), 812; France Co. v. Evatt, Tax Commr., 143 Ohio St., 455, 55 N. E. (2d), 652, 654; Dye Coal Co. v. Evatt, Tax Commr., 144 Ohio St., 233, 58 N. E. (2d), 653; Pioneer Linen Supply Co. v. Evatt, Tax Commr., 146 Ohio St., 248, 65 N. E. (2d), 711; Huron Fish Co. v. Glander, Tax Commr., 146 Ohio St., 631, 67 N. E. (2d), 546; Kroger Grocery & Baking Co. v. Glander, Tax Commr., 149 Ohio St., 120, 77 N. E. (2d), 923; Fyr-Fyter Co. v. Glander, Tax Commr., 150 Ohio St., 118, 80 N. E. (2d), 776; Terteling Bros., Inc., v. Glander, Tax Commr., 151 Ohio St., 236, 85 N. E. (2d), 379; TriState Asphalt Corp. v. Glander, Tax Commr., 152 Ohio St., 497, 90 N. E. (2d), 366; Mead Corp. v. Glander, Tax Commr., 153 Ohio St., 539, 93 N. E. (2d), 19; Jackson Iron & Steel Co. v. Glander, Tax Commr., 154 Ohio St., 369, 96 N. E. (2d), 21; W. E. Anderson & Sons Co. v. Glander, Tax Commr., 154 Ohio St., 561, 97 N. E. (2d), 29; Crowell-Collier Publishing Co. v. Glander, Tax Commr., 155 Ohio St., 511, 99 N. E. (2d), 649.
In each of those instances this court has been called upon to determine what the General Assembly meant. *449 by the word “directly” as used in that statute, or, more specifically, whether, in the particular case, there was a direct use or consumption in a particular activity of the items whose sale was claimed not to be subject to the sales or use tax.
The court has definitely rejected my views, set forth in the dissenting opinion in Terteling Bros. v. Glander, Tax Commr., supra, as to what the General Assembly intended by the words used in this statute. Therefore no useful purpose will be served by my continued adherence to those views.
However, in my opinion, the decision being rendered in the instant case cannot be reconciled with several prior decisions of this court determining that certain specific items were used or consumed directly in certain particular activities.
In Bailey v. Evatt, Tax Commr., supra, this court unanimously held that equipment and supplies to be used and consumed in stripping the surface soil from natural gravel deposits and excavating therefrom sand and gravel were, within the meaning of Section 5546-1, General Code, used or consumed “directly in the production of tangible personal property [i. e. sand and gravel] for sale by * * # processing # # * [or] mining.”
In France Co. v. Evatt, Tax Commr., supra, this court held that dump ears, movable tracks with rails, ties, spikes and bolts which go to make up the movable tracks, locomotive engines, locomotive cranes, movable shovels, loaders, together with coal, petroleum, products and other supplies consumed in the operation of this equipment, where used in the transportation of crushed stone products from a stone crushing and screening plant to yards adjacent thereto and in draining, cleaning, blending and reassembling such products to comply with the specifications of the purchasing trade so as to make them available and ready for *450 market and sale, were used or consumed “directly in the production of tangible personal property for sale by* * * processing * * *.”
In Dye Coal Co. v. Evatt, Tax Commr., supra, this court unanimously held that “automobile trucks purchased by a mining company to be used exclusively to haul coal from the excavation or pits, following its extraction from the earth, to a tipple where the coal is cleaned and graded for shipment” were used or consumed “directly in the production of tangible personal property for sale by * * * processing * * * [or] mining. ’ ’
In Terteling Bros. v. Glander, Tax Commr., supra, this court held that power shovels and fuel oil therefor, used in strip mining to remove the overburden and load coal into trucks in the pits, were used or consumed “directly in the production of tangible personal property for sale by * * * mining.”
In Mead Corp. v. Glander, Tax Commr., supra, this court held that a diesel electric locomotive used in the process of manufacturing paper was used or consumed “directly in the production of tangible personal property for sale by manufacturing * * * [or] processing ft # j j
If it can be said that capital items, such as those involved in the Bailey, France, Dye, Terteling and Mead cases, were, within the meaning of the statutory language, used or consumed “directly” in certain activities, how can it be said that the “mats, engravings, etchings, half-tones and similar materials, ’ ’ which are not even capital items of equipment, were not used in the instant case “directly in making retail sales” within the meaning of the statutory language. The advertisements, resulting from use of these mats, engravings, etchings, half-tones and similar materials, .could not be produced .without their use. Such advertisements and the use of these items in producing those *451 advertisements conld only be for tbe purpose of making retail sales.
In the instant case, the “mats, engravings, etchings, half-tones and similar materials” are used only in and are essential for producing advertisements used exclusively in promoting retail sales. What reason is there for saying that they are not used or consumed “directly in making retail sales” if envelopes, which carry printed advertising material to prospective customers, are so used, as was held in Crowell-Collier Publishing Co. v. Glander, Tax Commr., supra? The items involved in the instant case would even appear to be “promotional advertising material” as to which Hart, J., stated in the opinion in the latter case that “clearly, the purchase of such advertising material is excepted.”
It may be suggested that the mats, engravings, etchings, half-tones and similar materials are one step removed from the advertisements and that only the advertisements are used in making “retail sales,” even though the foregoing items are admittedly used and consumed in making the advertisements. However, the envelopes in the Crowell-Collier case were likewise one step removed from the printed advertising material there involved. Likewise, the fuel used to operate the equipment in the France case and in the Terteling Bros, case was at least one step removed from the activity in which the equipment was used. Furthermore, the cartons, barrels and .other shipping containers used in transportation to retail stores, held to be used or consumed “directly in the production of tangible personal property for sale by manufacturing, [or] processing, * * * or directly in making retail sales” in the unanimous decision of this court in Kroger Grocery & Baking Co. v. Glander, Tax Commr., supra, would obviously appear to be at least one step removed both from the “production by manufacturing *452 or processing” of the property shipped in those containers and also from “making retail sales.”