Herbert, J.
In case No. 35304, the Board of Tax Appeals held that under the authority of the ease of Columbus Southern Lumber Co. v. Peck, Tax Commr., 159 Ohio St., 564, 113 N. E. (2d), 1, Zinc Engravers may secure the refund even though it has been reimbursed by Polsky as it has promised that any refund obtained will be considered the property of Polsky. This holding is not challenged here and is not unreasonable in view of the agreed facts.
In its decision, the board then stated:
“It is admitted that the A. Polsky Company did not itself use and consume the items purchased directly in manufacturing or processing anything for sale. Again, this claim for refund would be denied by the Board of Tax Appeals were it not for the decision of the Supreme Court of Ohio in the case of Apex Powder Corp. v. Peck, 162 Ohio St., 189, wherein that court held that there is no condition prerequisite in Section 5739.01, Revised Code, that the ultimate retail sale be made by the purchaser of the items claimed to be exempt.
“There being no dispute that the items of tangible personal property, upon which the $810.61 tax was paid, were used and consumed by the Akron Beacon Journal in printing or processing its newspaper for sale, it must and does follow that if effect is to be given to the Supreme Court cases above noted, the Tax Commissioner was in error in not granting the refund to appellant in the amount of $810.61.”
It would appear clear that, had the board found the earlier exemption certificate valid, it would have similarly applied its interpretation of the rule in the Apex case and reversed the order of the Tax Commissioner with respect to the $7,642.16 claimed.
Considering first then the blanket exemption certificate executed on July 31, 1946, this form was promulgated by the *46 Tax Commissioner under Ms Rule No. 93, dated January 2, 1946. The board held that this disputed exemption certificate given to Zinc Engravers by Polsky failed to “specify in detail” as required on the form, relying upon the cases of American Culvert-Fabricating Co. v. Glander, Tax Commr., 158 Ohio St., 351, 109 N. E. (2d), 475, and Queen City Valves, Inc., v. Peck, Tax Commr., 161 Ohio St., 579, 120 N. E. (2d), 310.
Examination of the blanket certificate of exemption held invalid by the board shows seven printed grounds for claiming exemption, followed by a dotted line under which appears, “Other — (specify in detail).” On this dotted line written in longhand appear the words, “Newspaper Engravings.” A box appears at the left of each enumerated ground. On the form Polsky used there is no mark in any box indicating the selection of any particular ground, but it is quite apparent that the company was specifying newspaper engravings by the longhand entry therein.
At the time this form was in use, Rule No. 103 (repealed May 7, 1956) provided in part:
“All sales by printers, lithographers, multigraphers, mimeographers, etc., are taxable, unless exempted in the classifications as follow:
“1. Where the purpose of the purchaser is to use or consume the printed matter directly in the production of tangible personal property for sale by manufacturing, processing, refining, mining, farming, horticulture or floriculture.
“2. Where the purpose of the purchaser is to use or consume the printed matter directly in making retail sales.”
Also in effect then — as well as now — was Rule No. 43 treating with “personalty used in making retail sales.” This rule as revised October 7, 1947, is as follows:
“Sales of tangible personal property which is to be used or consumed directly in the operation of making retail sales are not subject to the tax.
“Sales falling within this exempt classification include only show cases, equipment and shelves used to display merchandise for sale; store furniture and fixtures; supplies and equipment used to pnce and describe merchandise; supplies and equipment used in consummating retail sales and refrigerating equip *47 ment used to preserve perishable merchandise for sale. * * *” (Emphasis added.)
It is clear that these rules are intended to guide both consumers and vendors with respect to filing claims for exemption, but it is elementary that they must be in conformity with the statutes.
In the instant eases the claims for refund are based on “exceptions” as set forth in Section .5739.01, Revised Code, rather than “exemptions” as set forth in Section 5739.02, Revised Code, but apparently these words are used interchangeably in the Tax Commissioner’s rules and forms and will be so treated here.
Section 5546-3, General Code, as effective from 1937 until recodified as Section 5739.03, Revised Code, in 1953, provided in part:
“In ease the tax does not apply to a sale, the consumer must furnish to the vendor and the vendor must obtain from the consumer a certificate in proper form, indicating that the sale is not legally subject to the tax'herein imposed. The certificate herein required shall be in such form as the commission shall by regulation prescribe, and in case no certificate is furnished or obtained prior to the time the sale is consummated, the tax shall apply.”[1] (Emphasis added.)
This portion of the section as it appears in its recodified form is in substantially the same form and still contains the word, “indicating.”
In our view the American Culvert-Fabricating case and Queen City Valves case, supra, relied upon by the board are not authority for holding that the blanket certificate of exemption executed by Polsky in 1946 lacked specificity. Those cases were concerned with the word, “specify,” as contained in what is now Section 5717.02, Revised Code, dealing with appeals to *48 the Board of Tax Appeals from final determinations of the Tax Commissioner.
It is not considered necessary to differentiate in this opinion between “indicating” and “specify” in construing legislative intent, as the difference is self-evident.
Certificates of exemption are usually executed by laymen (in many instances, clerical employees) and not by lawyers trained in the interpretation of tax laws and rules. In the instant cases we are of the view that the Tax Commissioner was sufficiently apprised of the nature of Poisky’s exemption claim.
In the exemption form issued under Rule No. 93, the phrase, “specify in detail,” must be treated as directory within the meaning of the word, “indicating,” as it appears in Section 5739.03, Revised Code, and not the word, “specify,” as used in Section 5717.02, Revised Code.
We hold, therefore, that, where a blanket certificate of exemption on a form prepared by the Tax Commissioner is executed by a consumer and delivered to the vendor, containing a longhand identification of the material the transfer of which is sought to be excepted from the sales tax, and there are statutes and rules in force under which exemption of the identified material may reasonably be claimed, such certificate meets the statutory requirement of “indicating” that the sale is not legally subject to the tax (Section 5739.03, Revised Code) and is not invalid for failure to “specify in detail.” So holding, these cases may be treated as one for further consideration.
Cases involving exemption claims under the sales tax law are usually difficult, frequently complex and rarely alike. In this class of cases, the usual function of this court is not so much to review the factual determinations of the Board of Tax Appeals in the light of the evidence as it is to construe the applicable statutes for guidance in such determinations.
As pertinent here, Section 5739.01, Revised Code, provides, in part:
“(E) ‘Retail sale’ and ‘sales at retail’ include all sales except those in which the purpose of the consumer is: a # # #
“(2) * * * to use or consume the thing transferred directly *49 in the production of tangible personal property for sale by manufacturing, processing, refining, or mining * * * or directly in making retail sales * * V’
Zinc Engravers has contended in the appeal to the board and to this court that the sales of the engravings, etchings and mats were excepted from the sales tax because they were “wseá directly in the production of tangible personal property for sale by manufacturing” and because “the purpose of the consumer was to purchase the said engravings, etchings and mats for use directly in the production of tangible personal property for sale by manufacturing or processing.” This is, of course, a paraphrasing of the statutory language.
In finding in favor of Zinc Engravers, the board as noted above relied primarily on the Apex case, supra. The syllabus in that case holds:
“Within the meaning of the exception in the definition of retail sale and sales at retail in Section 5546-1, General Code [Section 5739.01, Eevised Code], a ‘consumer’ may have a ‘purpose * * * to use’ a ‘thing transferred directly in the production of tangible personal property for sale by * * * mining,’ even though such tangible personal property will not be owned or sold by such consumer.”
In that case the consumer (Apex) owned the blasting equipment which was used or consumed but did not own the tangible personal property (coal) produced for sale in the process. Here, the consumer (Polsky) owned the engravings and mats used or consumed but did not own the tangible personal property (newspapers) produced for sale in the process. In that factual respect the cases are alike. However, there, the consumer (Apex) used or consumed the blasting equipment purchased, whereas, here, the consumer (Polsky) did not use or consume the engravings and mats but delivered them to the Akron Beacon Journal for its use or consumption in producing the newspaper which was “the tangible personal property produced for, sale by manufacturing, processing.”
The rule stated in the Apex case is clear but it is questionable whether it covers and is applicable to the facts in the instant cases.
The facts in the case of Elder & Johnston Co. v. Glander, *50 Tax Commr., 156 Ohio St., 445, 103 N. E. (2d), 392, are almost identical with the facts here. Paragraphs one and two of the syllabus therein are not pertinent to the issue here, but paragraph three holds:
“3. Such materials are not thereby used directly in making retail sales within the meaning of the statute.”
In the majority opinion it is stated:
“A study of the record discloses no evidence of a sale of these materials to the newspaper publishers by the appellant. The only sale of the materials was when the appellant itself purchased them, and they thereafter remained the property of the appellant alone for whatever use, if any, the appellant alone wished to make of them. The newspaper publishers simply sold the appellant the advertising space for whatever use the appellant wished to make of it, and the price of the space remained the same irrespective of whether the content included these materials. The materials formed no part of the consideration therefor.
“The appellant’s second contention is that the materials were used ‘directly in making retail sales.’
“The appellant relies on the decision of this court in the cases of Crowell-Collier Publishing Co. v. Glander, Tax Commr., and McCall Corp. v. Glander, Tax Commr., 155 Ohio St., 511, 99 N. E. (2d), 649.
“In those cases it was held that certain envelopes were used directly in making retail sales. Two types of envelopes were involved. One was a so-called container envelope which was addressed and mailed directly to a potential subscriber to a magazine. The second was an envelope addressed directly to the publisher and enclosed together with printed advertising matter in the first envelope.
“In contrast in the instant case the materials were incidental to the advertisements and were used indirectly in offering the appellant’s merchandise to the general public. This view is consistent with that part of the decision in the Crowell and McCall cases, supra, holding that a mechanical conveyor used to transport magazines from a mailing room to trucks and railroad cars was not used directly in the production of tangible personal property for sale.
*51 “The Board of Tax Appeals was not in error in holding that the appellant did not purchase the materials for the purpose of resale to the newspaper publishers and that the materials were not used directly in making retail sales.”
Two members of the court dissented from the third paragraph of the syllabus and the judgment, relying primarily on the Crowell-C oilier case, supra. Paragraphs one and two of the syllabus in that case state:
“1. By virtue of the provisions of Section 5546-1, General Code, and the rule adopted by the Tax Commissioner for the administration of the sales tax imposed thereby, the purchase of tangible personal property to be used or consumed in the production for sale at retail of other tangible personal property and the purchase of printed advertising material to be used or consumed in the promotion of retail sales of the products of a manufacturer of other tangible personal property are excepted from taxation.
“2. The purchase by a publisher of magazines of self-addressed envelopes to be enclosed with mailed packages of printed advertising material soliciting subscriptions to the magazines and the purchase of container envelopes to enclose and carry in the mail such self-addressed envelopes and packages of printed advertising material to potential subscribers to such magazines for the purpose of securing subscriptions thereto, which envelopes bear either the name of a magazine or the name of the publisher thereof, are purchases of advertising matter used exclusively in promoting retail sales of such magazines and are excepted from taxation.”
It is apparent that but for the ruling in the Elder case, supra, the former exemption of Rule No. 103 would have sufficed to exclude the sale of the property under consideration here from the tax, particularly in the light of the Croivell-Coilier case.
It is equally apparent that Zinc Engravers now seeks to have the rule in the Apex case extended to cover the facts of its case in an effort to regain the exempted position which it formerly enjoyed prior to the Elder case decision.
As we view it, such extension of the Apex rule would go beyond the clear language of Section 5739.01, Revised Code. *52 There, the claimant established that it was the purpose of the consumer to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing, processing, refining or mining. Here, Zinc Engravers has established only that the purpose of the consumer was that the thing transferred be used or consumed directly in such production of tangible personal property. Admittedly, the use or consumption of “the thing transferred” was by some one other than the consumer. We do not believe that the Legislature intended the exception under this category to be extended beyond the use or consumption by the consumer himself.
Although it was unquestionably Polsky’s purpose that the items purchased, as to which sales tax exception is sought here, were to be used or consumed by the Akron Beacon Journal, certainly such use or consumption was incidental so far as Polsky’s main objective was concerned. Obviously, that main objective was “to use or consume” these items “directly in making retail sales.” In that sense Polsky used them, whereas in the sense of “production of tangible personal property for sale by manufacturing” the Akron Beacon Journal used them.
In determining the reasonableness of the decision of the Board of Tax Appeals here, we are, therefore, brought to a further consideration of the statutory phrase, “directly in making retail sales.”
The decision in the Crowell-Coilier case, supra, recognizes that purchases of advertising material used exclusively in promoting retail sales of magazines are excepted from the sales tax. Certainly in the case of a retail store such as Polsky’s, newspaper advertisements are intended only to accomplish this same result, i. e., the promotion of retail sales of its merchandise.
Rule No. 43 recognizes that the sales of “supplies and equipment used to price and describe merchandise” are exempt from such sales tax.
It would be a distinction without a difference to hold that such supplies and equipment must be used or consumed only within the store if the sale is to be excepted from tax.
Although mats, etchings and engravings are not usually furnished to the newspaper by the advertiser but are purchased *53 by the newspaper directly, they are certainly comparable to the items exempted in Rule No. 43 and come under the category .of materials the sale of which is excepted under the Croivell-Coilier case decision.
Further, direct use in making retail sales is defined as “indispensable use” in the cases of Fyr-Fyter Co. v. Glander, Tax Commr., and Hanna Coal Co. v. Glander, Tax Commr., 150 Ohio St., 118, 80 N. E. (2d), 776, and Midwest Haulers, Inc., v. Glander, Tax Commr., 150 Ohio St., 402, 83 N. E. (2d), 53.
In the Fyr-Fyter case, it was held that fire-fighting equipment was not indispensable in the mining operation and therefore its sale was not excepted.
In the per curiam opinion in the Midwest Haulers case (page 407), it is stated:
“None of the items the sale and use of which were held taxable in the instant case was indispensable in rendering a public utility service. It is true that the items were used in the business, but their use was merely convenient or facilitative, and being such were not entitled to be excluded from taxation under the provisions of Sections 5546-1 and 5546-25, General Code.”
Applying this test, it would require a strained interpretation to hold that under present marketing practices the use of the materials in issue here was not indispensable “in making retail sales.” Simplicity in the interpretation of applicable statutes is certainly to be desired.
It is, therefore, our conclusion that mats, engravings and etchings purchased by a retail business concern and then delivered by it without charge to newspaper publishers for use in newspaper advertisements concerning its merchandise are used directly in making retail sales within the meaning of Section 5739.01, Revised Code, and sales of such materials for such purpose are excepted from the tax.
So holding, it is the view of the writer that paragraph three of the syllabus in the Elder & Johnston case, supra, should be overruled (cf. dissenting opinion in the ease of Standard Oil Co. v. Peck, Tax Commr., 163 Ohio St., 63, 125 N. E. [2d], 342).
Accordingly, that part of the decision of the Board of Tax Appeals complained of in case No. 35304 is affirmed, and that *54 part of the decision complained of in case No. 35326 is reversed, and final judgment is rendered in both for Zinc Engravers.

Decision affirmed in part and reversed in part.

Stewart, Taft, Matthias and Bell, JJ., concur.
•Weygandt, C. J., concurs in part.
Zimmerman, J., dissents in part.

 Although not pertinent to the issue here, it may be noted that in 1955 the Legislature again amended this section by deleting the four words, “the tax shall apply,” at the end of the above quotation, and substituted the following: “it shall be presumed that the tax applies. The failure to have obtained, or to have furnished, a certificate shall not prevent a vendor or consumer from establishing that the sale is not subject to the tax, and in such event the tax shall not apply,”