OHIO CHILDREN'S SOCIETY, INC., APPELLANT, *v.* PORTERFIELD, TAX COMMR., APPELLEE.

[Cite as Ohio Children's Society v. Porterfield (1971), 26 Ohio St. 2d 30.]

(No. 70-472—Decided March 31, 1971.)

*Messrs. Dagger, Lantz & Johnston,* for appellant.

*Mr. Paul W. Brown,* attorney general, and *Mr. C. Luther Heckman,* for appellee.

*Per Curiam.* In recent years this court has had occasion to review determinations of whether the operations of certain organizations were "exclusively for charitable purposes." See *Vick* v. *Cleveland Memorial Medical Foundation* (1965), 2 Ohio St. 2d 30; *Planned Parenthood Assn.* v. *Tax Commr.* (1966), 5 Ohio St. 2d 117; *Carmelite Sisters, St. Rita's Home,* v. *Bd. of Review* (1969), 18 Ohio St. 2d 41. In each of those cases, after construing the relevant statutory provisions strictly against the parties seeking exemption from some legal mandate, a majority of the court found the operations to have been operated "exclusively for charitable purposes."

In *Planned Parenthood, supra,* Justice Schneider gave his approval to the following definition of charity: "* * * the attempt in good faith, spiritually, physically, intellectually, socially and economically to advance and benefit mankind in general, or those in need of advancement and benefit in particular, without regard to their ability to supply that need from other sources and without hope or expectation, if not with positive abnegation, of gain or profit by the donor or by the instrumentality of the charity."

Being cognizant of the prior tacit approval of that definition as indicative of the General Assembly's intent in using the word "charity," our task would be much easier in the instant case if we were to decide the compatibility of th· facts in this case with that definition. How-

ever, any definitive precedent which may be drawn from the above-cited cases is not available in this case, since here we are dealing with a statute which is different from those considered in *Vick, Planned Parenthood* and *Carmelite Sisters.*

In pertinent part, R. C. 5739.02 reads as follows:

"* * * an excise tax is hereby levied on each retail sale made in this state of tangible personal property.

"* * *

"(B) The tax does not apply to the following:

"* * *

"(12) Sales of tangible personal property to churches and to *organizations* not for profit *operated exclusively for charitable purposes* in this state, no part of the net income of which inures to the benefit of any private shareholder or individual and no substantial part of the activities of which consists of carrying on propaganda or otherwise attempting to influence legislation.

"Charitable purposes means the relief of poverty, the improvement of health through the alleviation of illness, disease, or injury, the operation of a home for the aged, as defined in Section 5701.13 of the Revised Code, the promotion of education by an institution of learning which maintains a faculty of qualified instructors, teaches regular continuous courses of study, and confers a recognized diploma upon completion of a specific curriculum, or the promotion of education by an organization engaged in carrying on research in, or the dissemination of scientific and technological knowledge and information primarily for the public."

Before examining the facts of the instant case to discover whether the decision of the Board of Tax Appeals is unreasonable or unlawful, we reiterate that prior holdings of this court require that any statute granting an exemption from taxation must be strictly construed. An exemption is to be granted only upon a showing that that which is claimed to be exempt is clearly within the express meaning of the statute granting the exemption. *Cullitan*

v. *Cunningham Sanitarium* (1938), 134 Ohio St. 99, paragraph one of the syllabus; *Battelle Memorial Institute* v. *Dunn* (1947), 148 Ohio St. 53, 59; *East End Hospital* v. *Evatt* (1942), 139 Ohio St. 608; *Watterson* v. *Halliday* (1907), 77 Ohio St. 150, 169.

Exemption from taxation is in derogation of rights of all taxpayers and effectively shifts a greater tax burden to the nonexempt. When the General Assembly sees fit to encourage certain activities by the granting of a tax exempt status, it is the duty of the courts strictly to construe exemption provisions, rigidly applying only the *express* intent of the General Assembly. *Lutheran Book Shop* v. *Bowers* (1955), 164 Ohio St. 359, 362.

Construing R. C. 5739.02(B) (12), as we must, we cannot say that the board's decision was unreasonable or unlawful. Appellant's executive director, Mrs. Cady, was its only witness. Mrs. Cady's testimony revealed that appellant's 12-member board of trustees serves without either compensation or reimbursement for their expenses. The Society has a paid staff of five full-time and five part-time employees. The organization also has an advisory committee composed of certain professional people, including doctors, who receive compensation only for their professional services.

The Society provides counselling to unwed mothers, their families, the fathers, and the prospective adopting parents with regard to problems each may encounter during the birth and adoption process. These counselling services also have dealt with suicide and abortion problems. The counselling services are rendered without charge to the recipients. The Society also directs these people to other sources of assistance which might be available.

Such services are provided for approximately 200 unwed mothers per year, and about half of the children born of these mothers are placed for adoption.

Should the unwed mother "register" with appellant, she is charged a $3 per day fee for care of her child until a permanent placement, be it adoption or otherwise, is

made. This $3 charge does not cover the expense to appellant of providing the care offered, and in some instances it is never collected. Some of the children have received prolonged care of a specialized nature, that extra expense also being paid by appellant.

The only other source of appellant's revenue, aside from some incidental gifts, is from a $600 fee charged adopting parents, and reimbursement from these parents for certain expenses incurred during visitations by appellant's staff. During the course of its operations appellant has built up a "reserve" of some $20,000 to $25,000 from this income; however, during the year 1968, its expenditures exceeded its income by some $17,000. Appellant has no endowment, and receives no other public or private assistance.

Mrs. Cady has lectured at nursing schools regarding available help for unwed mothers, and has given assistance to students engaged in research. The Society also prepares and distributes pamphlets regarding adoption and appellant's services.

Appellant contends that its activities fall within the definition of charitable purposes (R. C. 5739.02[B] [12]) in that it is engaged in "the relief of poverty," "the alleviation of illness," and "the promotion of education by an institution of higher learning * * *." Specifically, appellant claims that its activities in counselling help those who might otherwise suffer mental "illness." It also urges that placing unwanted children with adopting parents keeps many children from poverty and a childhood where welfare assistance is necessary. Thus, appellant argues it is involved in the relief of poverty. Finally, appellant argues that it is engaged in the "promotion of education by an institution of learning" in that Mrs. Cady has lectured at various nursing schools and assisted students in the preparation of papers.

Under the facts of this case, while all the Society's activities may well be "charitable," within the normal and broad sense of the term, to hold as a matter of law

that they fall within the more restricted purview of R. C. 5739.02(B) (12) would not be in keeping with the rule of strict construction to which we are bound. In our view, whether appellant's activities relieve poverty and alleviate illness, disease, or injury is a question upon which reasonable minds could differ. That question is a matter for determination by the trier of the facts—the Board of Tax Appeals. Furthermore, from the facts adduced, we cannot find, as a matter of law, that the society is an institution of learning, or that it is engaged in the promotion of "education * * * engaged in carrying on research in, or the dissemination of scientific and technological knowledge and information primarily for the public."

If the exemption from sales taxation were to be granted as broadly as in *Vick* v. *Cleveland Memorial Medical Foundation, supra,* under R. C. 5709.12; as in *Planned Parenthood Assn.* v. *Tax Commr., supra,* under R. C. 5731.09; or as in *Carmelite Sisters, St. Rita's Home,* v. *Board of Review, supra,* under R. C. 4141.01(B) (2) (h), perhaps a different result might prevail. This is not such a case. R. C. 5739.02(B) (12) does exempt activities operated exclusively for charitable purposes, but defines "charitable purposes" far more explicitly.

There is no question that appellant's activity is socially admirable and serves as a positive force in an attempt to uplift the quality of life in our complex society. However, the General Assembly has not broadened the exemption from sales taxation to such an extent that, as a matter of law, we can hold that appellant is exempt from the tax.

On the other hand, the trier of the facts could have found, from the facts adduced and the legitimate inferences drawn therefrom, that appellant did fall within the statutory exemption; however, the board did not. If it is claimed that the board's decision is against the weight of the evidence, the Court of Appeals is the appropriate court to consider that question. *Ace Steel Baling* v. *Porterfield* (1959), 19 Ohio St. 2d 137.

We cannot say that the board did not apply the

correct law to the facts, or that its decision is unreasonable or unlawful.

*Decision affirmed.*

O'Neill, C. J., Schneider, Herbert, Duncan, Corrigan, Stern and Leach, JJ., concur.

Herbert, J., concurring. As the majority opinion aptly points out, the General Assembly has prescribed a definition of "charitable purposes" for the courts to follow in determining an exemption from state sales taxation. If that definition is probative and reasonable for such purpose, the question recurs as to why this court adopted a far different standard in the *Vick, Planned Parenthood* and *Carmelite Sisters* cases, *supra*. It is difficult to see the logic in a postulate which assumes such a compelling difference between exemption from sales taxation and exemption from (1) real and tangible property taxation, (2) estate taxation or (3) unemployment fund taxation.