[This opinion has been published in *Ohio Official Reports* at 85 Ohio St.3d 514.]

ANHEUSER-BUSCH, INC., APPELLANT, v. TRACY, TAX COMMR., APPELLEE.

[Cite as *Anheuser-Busch, Inc. v. Tracy*, 1999-Ohio-284.]

*Taxation—Sales and use taxes—Equipment used by beer brewer which prepares bottles and labels for labeling and encodes bottles not exempt from taxation under manufacturing or packaging exemptions.*

(No. 97-2443—Submitted January 26, 1999—Decided May 26, 1999.)

APPEAL from the Board of Tax Appeals, Nos. 95-T-922 and 95-T-923.

———————————

{¶ 1} This case pertains to imposing Ohio's use tax on the purchases of machinery by this taxpayer and whether these purchases are taxable in light of the manufacturing exception and packaging exemption.

{¶ 2} Appellant, Anheuser-Busch, Inc., brews and bottles beer at its plant in Columbus. Appendix A [Appendix A is not included in the Internet version of this case] depicts Anheuser-Busch's Bottle Line 25. After it is brewed, the beer is dispensed into bottles at a filler station. The bottles are capped and the beer level is measured by the full-bottle-filtec machine. The filled bottles then pass through the pasteurizer, which promotes the product's shelf life by killing bacteria that would spoil it.

{¶ 3} The filled bottles are next conveyed to the labeler location. The bottles first pass the Paxton Air Blower Bottle Drying System to remove moisture from the exterior surface of the bottle. Once dry, an ink code and labels are applied to the bottle. A Videojet coding machine prints a code on the bottle that details where and when Anheuser-Busch produced the bottle of beer.[1] Anheuser-Busch

———————————

1. The BTA found that the Videojet coding machine was used during, but not in, the manufacturing process on the can line, and Anheuser-Busch argues that the Videojet coding machine attached to

then applies glue to bottle labels with glue rollers and applies the labels to the bottles.

{¶ 4} The Tax Commissioner assessed use tax against the Videojet coding machines and the glue rollers purchased by Anheuser-Busch in the audit period January 1, 1988 through June 30, 1990. He also assessed use tax, using the new statutory manufacturing exception and different applicable rules, against the Paxton blower system and the Videojet coding machines in the audit period July 1, 1990 through December 31, 1992.

{¶ 5} On appeal, the BTA affirmed the commissioner's orders, concluding that Anheuser-Busch used these items after manufacturing ended. The BTA also found that these items did not meet the packaging exemption.

{¶ 6} This cause is now before the court upon an appeal as of right.

––––––––––––––––––

*Squire, Sanders & Dempsey* and *Ted B. Clevenger*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Richard C. Farrin*, Assistant Attorney General, for appellee.

––––––––––––––––––

**COOK, J.**

{¶ 7} R.C. 5739.02 levies an excise tax on all retail sales made in Ohio. R.C. Chapter 5739 excepts certain sales from the definition of retail sales and exempts certain retail sales from the tax. Furthermore, R.C. 5741.02(C)(2) exempts purchases of items from the use tax when the acquisition, "if made in Ohio, would be a sale not subject to the tax imposed by [R.C. Chapter 5739]."

{¶ 8} Anheuser-Busch argues that the purchased machinery in dispute is excepted because it used the equipment directly in manufacturing under former

the can line is excepted. However, according to Anheuser-Busch's witness and its Exhibit B, only the Videojet coding machines attached to the bottle line are currently in dispute.

R.C. 5739.01(E)(2) and (R)(1), or primarily in a manufacturing operation under current R.C. 5739.01(E)(9) and (S) and R.C. 5739.011. Alternatively, Anheuser-Busch contends that the disputed equipment purchases qualify for the packaging exemption in former R.C. 5739.02(B)(15). The commissioner responds that Anheuser-Busch used the equipment after manufacturing ended and that Anheuser-Busch did not use the equipment in packaging tangible personal property for sale. It falls upon Anheuser-Busch, then, to affirmatively establish its right to an exemption. *Natl. Tube Co. v. Glander* (1952), 157 Ohio St. 407, 47 O.O. 313, 105 N.E.2d 648, paragraph two of the syllabus. In determining whether an exemption applies, we must narrowly construe the relevant statutes. *Id.*

## MANUFACTURING

{¶ 9} As to the first audit period, Anheuser-Busch claims exemption under the former manufacturing exception for its Videojet coding machines and glue rollers. During that time, R.C. 5739.01(E)(2) provided:

" 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is * * * to use or consume the thing transferred directly in the production of tangible personal property * * * for sale by manufacturing [or] processing[.]"

{¶ 10} The General Assembly defined "manufacturing" or "processing" in former R.C. 5739.01(R)(1) as:

"[T]he transformation or conversion of material or things into a different state or form from that in which they originally existed. Manufacturing or processing begins at the point where the transformation or conversion commences, or at the point where raw materials are committed to the manufacturing process in a receptacle by being measured, mixed, or blended, whichever occurs first, and ends when the product is completed."

"[D]espite the diverse factual contexts to which R.C. 5739.01(E)(2) has been applied, a synthesis of past decisions reveals a nearly uniform analysis. The

central inquiry remains as follows: '[w]hen does the manufacturing or processing activity begin and end, and is the property used or consumed during and in the manufacturing or processing period?' * * * Consequently, tangible personal property which is employed in operations *preliminary* or *preparatory* to production of the marketable product, * * * or employed subsequent to completion of the manufacturing process, * * * is not exempt." (Emphasis *sic*.) (Citations omitted.) *Bird & Son, Inc. v. Limbach* (1989), 45 Ohio St.3d 76, 79, 543 N.E.2d 1161, 1164-1165.

**{¶ 11}** The BTA correctly decided that "Anheuser-Busch's processing of beer ends at the conclusion of the pasteurization process." This process, which occurs after the beer is bottled and capped but before labeling, kills harmful bacteria and is the final transformation of the ingredients into beer. As the BTA aptly stated, "[t]he beer in the unlabeled bottles is as fit for consumption prior to the application of label as it is afterwards. Consequently, because the labeling of bottles occurs subsequent to processing, and because labels do not alter the state or form of the beer, we find that the manufacturing exception under R.C. 5739.01(E)(2) does not apply to the purchase and installation of the glue rollers on the labelers."

**{¶ 12}** Moreover, the BTA decided that "the [Videojet] coding is used for internal tracking. * * * Like the labeling process for the bottles, the coding does not alter the state or form of the [bottled] beer. Accordingly, we find that R.C. 5739.01(E)(2) does not apply to the Videojet coding system." We agree with the BTA's conclusions.

**{¶ 13}** During the later audit period, pursuant to the redefined rules, the commissioner assessed use tax against the Paxton blower system and Videojet coding machines. The applicable, current version of R.C. 5739.01(E)(9) (formerly numbered [E][10]) states that " '[r]etail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is * * * [t]o use the thing

transferred, as described in section 5739.011 of the Revised Code, primarily in a manufacturing operation to produce tangible personal property for sale."

"[T]he 'thing transferred' includes, but is not limited to, any of the following:

"(1) Production machinery and equipment that act upon the product or machinery and equipment that treat the materials or parts in preparation for the manufacturing operation." R.C. 5739.011(B)(1).

{¶ 14} The manufacturing operation is the "process in which materials are changed, converted, or transformed into a different state or form from which they previously existed and includes refining materials, assembling parts, and preparing raw materials and parts by mixing, measuring, blending, or otherwise committing such materials or parts to the manufacturing process. 'Manufacturing operation' does not include packaging." R.C. 5739.01(S).

{¶ 15} The BTA correctly determined that the Paxton blower system and the Videojet coding machines function after the conclusion of the manufacturing operation. They play no role in changing, converting, or transforming ingredients into beer, the product here. Furthermore, as the BTA determined, these items are not production machinery. This equipment does not "act upon the product" as required by R.C. 5739.011.

PACKAGING

{¶ 16} Alternatively, Anheuser-Busch contends that, for both audit periods, the disputed items qualify for exemption under former R.C. 5739.02(B)(15), which read essentially the same for both audit periods:

"The tax does not apply to the following:

" * * *

"Sales to persons engaged in any of the activities mentioned in division (E)(2) or (10) [now numbered (9)] of section 5739.01 of the Revised Code, of packages, including materials and parts therefor [for packages], and of machinery,

equipment, and material for use * * * in packaging tangible personal property produced for sale, * * * or sold at retail. 'Packages' includes bags, baskets, cartons, crates, boxes, cans, bottles, bindings, wrappings, and other similar devices and containers, and 'packaging' means placing therein."

{¶ 17} This statute exempts two categories of items—packages and packaging equipment. "Only those items that are essential to the restraining of movement of the goods to be sold are exempt from taxation under the packaging exception of R.C. 5739.02(B)(15)." *Loctite Corp. v. Tracy* (1994), 71 Ohio St.3d 401, 644 N.E.2d 281, syllabus. There is no question here that purchases of bottling equipment qualify for the packaging exemption.

{¶ 18} In *Loctite*, we refused to except as packages design items used to create a prototype package. After reviewing the definition of "material" set forth in *Terteling Bros., Inc. v. Glander* (1949), 151 Ohio St. 236, 39 O.O. 60, 85 N.E.2d 379, paragraph three of the syllabus, we concluded that "[t]o be considered a 'constituent' of or from which the tangible personal property is made, the purchased item must be 'an essential part' that serves to form, compose, or make up the property produced." *Loctite*, 71 Ohio St.3d at 403, 644 N.E.2d at 283. Coupling this definition with one of the defining characteristics of a package, that the package must "restrain [the] movement of the packaged object in more than one plane of direction[,]" *Custom Beverage Packers v. Kosydar* (1973), 33 Ohio St.2d 68, 73, 62 O.O.2d 417, 419, 294 N.E.2d 672, 675, we determined only those items essential to restraining the movement of the goods to be sold fall within the packaging exemption of R.C. 5739.02(B)(15). *Loctite* at 403, 644 N.E.2d at 283. We concluded that "Loctite's primary economic purpose for these items was to facilitate the marketing of its products, not the packaging of them." *Id.* at 404, 644 N.E.2d at 284.

{¶ 19} Under our *Loctite* decision, the items at issue are not packages or packaging materials. The Paxton blower system dries the bottle preparatory to

coding and labeling the bottle. The glue rollers are used to apply labels, and the Videojet coding machine inks a code on the bottle. Because codes and labels are not essential in restraining movement, the equipment that prepares the bottle for labeling and coding, applies glue to the labels, or codes the bottle does not qualify as packages or packaging material under R.C. 5739.02(B)(15).

{¶ 20} Furthermore, in *Hawthorn Mellody, Inc. v. Lindley* (1981), 65 Ohio St.2d 47, 52, 19 O.O.3d 234, 238, 417 N.E.2d 1257, 1261, we held that "[t]o be excepted from taxation under R.C. 5739.02(B)(15), machinery or equipment must be used in placing tangible personal property produced for sale in packages." In that case, Hawthorn used a conveyor system that unstacked and cleaned packages (plastic and wire milk cases) and then conveyed the packages to another part of the system, where the packages were then automatically repacked with filled milk cartons. We exempted the system because it was an integral part of machinery or equipment that was used to place in packages the tangible personal property Hawthorn produced for sale.

{¶ 21} Unlike the conveyor system in *Hawthorn Mellody*, the equipment Anheuser-Busch seeks to exempt is not integral to the "packaging," as we have construed that term, of its product. The disputed equipment prepares bottles and labels for labeling, and encodes bottles; without question it is not used to place the beer into packages.

## CONCLUSION

{¶ 22} Anheuser-Busch did not use the disputed equipment directly in producing, by manufacturing or processing, tangible personal property for sale, nor was it used primarily in a manufacturing operation. Moreover, the equipment is not a package or packaging material, and it does not meet the definition of packaging equipment.

{¶ 23} Accordingly, the decision of the BTA, being neither unreasonable nor unlawful, is affirmed.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

PFEIFER, J., dissents.

LUNDBERG STRATTON, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 24} The Tax Commissioner contends that equipment used to affix labels on beer bottles doesn't fit within the manufacturing or packaging exception. Apparently it's not enough to tax the end-user. Now the Tax Commissioner wants to find every interstitial fissure within a manufacturing process that doesn't exactly and precisely fit an exception and tax that too.

{¶ 25} I believe that such a stance undermines the clear intent of the General Assembly. The General Assembly can, of course, enact another exception to cover can and bottle labeling machines. It shouldn't have to. Such specific exceptions make the Tax Code unnecessarily complex. It wouldn't have to if the Tax Commissioner didn't interpret the code unreasonably.

{¶ 26} Unfortunately, while Anheuser-Busch loses this case, the real burden of the Tax Commissioner's policy falls on small businesses that lack the resources to challenge the Tax Code. The Tax Code and its application should be logical and consistent. Sadly, the Tax Commissioner's stance on this and similar issues requires businesses to churn more paper, hire more lawyers, and waste more resources in a quixotic effort to comply with the Tax Commissioner's ever so tortured code interpretation and enforcement. I dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 27} I believe that the bottle drying system, Videojet coder, and the glue labelers are exempt under the packaging exception of former R.C. 5739.02(B)(15).

{¶ 28} The majority holds that the bottle drying system, glue rollers, and the Videojet coding system are not subject to the packaging exemption because (1) these pieces of equipment are not packages or packing material and (2) none of this equipment places the beer into the bottles. I believe that this interpretation is not supported by the language of former R.C. 5739.02(B)(15). I also believe that the majority's holding continues the artificial and unreasonable conclusion that labeling falls into a "no man's land" that is neither packaging nor manufacturing. Certainly this was not the intent of the General Assembly in enacting the manufacturing and packaging tax exemption statutes.

Labels are a Material that Constitutes Part of a Package

{¶ 29} In support of its holding that these pieces of equipment are not packages or packaging material, the majority relies primarily upon *Loctite Corp. v. Tracy* (1994), 71 Ohio St.3d 401, 644 N.E.2d 281. In *Loctite*, this court held that color separation negatives and chromolin proofs were not exempt under the packaging exemption because neither the negatives nor the chromolin proofs were part of the material that restrained the movement of the packaged goods. *Id.* at 403, 644 N.E.2d at 283.

{¶ 30} The restraint requirement for the packaging exemption was originally formulated in *Custom Beverage Packers, Inc. v. Kosydar* (1973), 33 Ohio St.2d 68, 62 O.O.2d 417, 294 N.E.2d 672. In *Custom Beverage*, the issue was whether unbound pallets were packages as defined in former R.C. 5739.02(B)(15). The court determined that the packages listed in former R.C. 5739.02(B)(15) restrained the packaged object in more than one direction. *Custom Beverage* at 73, 62 O.O.2d at 419, 294 N.E.2d at 675. Under this test, the court determined that unbound pallets were not packages because they restrained movement of cases of soft drinks in only one direction—down.

{¶ 31} In *Custom Beverage*, the court justifiably restricted its interpretation as to the nature of a package to prevent an unwarranted expansion to an item that

does not truly restrain the packaged item but merely provides a convenient support base for transportation of groups of the packaged items. I agree with this definition as to the general nature and purpose of a "package." However, I believe that the court in *Loctite*, and now the majority in this case, have taken the restraint requirement from *Custom Beverage* too far in holding that only materials incorporated into the package that also restrain the packaged product are exempt. More importantly, I believe that the court in *Loctite* misinterpreted former R.C. 5739.02(B)(15).

{¶ 32} Former R.C. 5739.02(B)(15) exempted "packages, *including material and parts therefor*." (Emphasis added.) In *Loctite*, the majority held that the language of R.C. 5739.02(B)(15) meant that "[o]nly those items that are essential to the restraining of movement of the goods to be sold are exempt from taxation under the packaging exception of R.C. 5739.02(B)(15)." *Loctite* at the syllabus. The court in *Loctite* reasoned that "the last sentence of the statute [R.C. 5739.02(B)(15)], which cites examples of packages, indicates that only material and parts that serve the essential purpose of the package [restraining movement of the packaged product] are exempt." *Id.* at 403, 644 N.E.2d at 283. I disagree.

{¶ 33} The last sentence of former R.C. 5739.02(B)(15) states that " '[p]ackages' includes bags, baskets, cartons, crates, boxes, cans, bottles, bindings, wrappings, and other similar devices and containers, and 'packaging' means placing therein." This sentence gives a nonexhaustive list of examples of packages, but in no way restricts the material or parts used to create a package to only those materials or parts that actually restrain the packaged product. Thus, I believe that the court in *Loctite* misinterpreted R.C. 5739.02(B)(15) in an overly restrictive fashion with regard to what materials that make up a package are exempt from taxation.

{¶ 34} The language of R.C. 5739.02(B)(15) is unqualified by any limiting language as to the definition of materials and parts that make up a package. Further,

10

common sense dictates that this description was intended to be broad and inclusive. Accordingly, I would hold that the plain language of former R.C. 5739.02(B)(15) indicates that *all* material and parts incorporated into the package are exempt from taxation, regardless of whether the particular material restrains movement of the packaged product.

{¶ 35} I find this interpretation particularly compelling when the relationship between a package and a label are considered. In today's society, a label is an absolute requirement to every commercially created package, and probably most non-commercial packages also.

{¶ 36} Further, both packaging and labeling serve equally compelling purposes. Practically speaking, packaging is necessary primarily to protect and restrain the packaged product for shipping. Labeling on the package, although not helpful in restraining a product, is just as essential for the purpose of informing the recipient of the nature, quantity, components, features, etc. of the packaged product. A product simply would not be marketable without a label. No one would purchase a bottle of beer without a means to determine its contents or manufacturer. Without a label, the packaged product may be useless or even dangerous to the ultimate consumer. Thus, I would find that common usage of the word "package" also includes its "label."

{¶ 37} Because of the plain language of R.C. 5739.02(B)(15) and the symbiotic relationship between packages and labels, I would hold that a label is part of the material that constitutes a package even though a label does not restrain the packaged product. Consequently, I would also modify *Loctite* to hold that while a package by nature must restrain the packaged product, no such limitation is placed on the material that is incorporated into the package. In other words, I would hold that all materials, specifically including labels, that are incorporated into or onto a package are exempt from taxation pursuant to R.C. 5739.02(B)(15).

The Bottle Dryer, Glue Rollers, and Videojet Coder are Equipment or Machines
that Package Tangible Personal Property

{¶ 38} The majority also holds that the bottle dryer, glue rollers, and the Videojet coder are not machines that are integral to packaging the beer because none of these machines places the beer into bottles.  I disagree.  In light of my aforementioned definition that a label is part of the material that constitutes a package, I would also hold that any machine or piece of equipment that applies or facilitates the application of a label onto a package is a machine or piece of equipment "for use * * * in packaging tangible personal property" pursuant to R.C. 5739.02(B)(15).

{¶ 39} In this case, the bottle dryer dries the bottle in preparation to accept a label, the glue roller distributes glue on the label so it can be affixed to the bottle, and the Videojet coder applies a code (label) to the bottle.  Therefore, I would find that each of these machines "packages" beer in bottles as the term is defined in R.C. 5739.02(B)(15).  Accordingly, I would hold that the glue rollers, bottle dryer, and Videojet coder are exempt from taxation pursuant to R.C. 5739.02(B)(15).  Accordingly, I dissent.

_____