OPINION
The Tax Commissioner of Ohio appeals from a judgment of the Miami County Court of Common Pleas, Probate Division, which held that an Individual Retirement Account owned by Robert Lawrence Roberts ("Roberts") at the time of his death should be excluded from his gross estate.
Roberts was employed by Pioneer Rural Electric Cooperative, Inc., and Pioneer maintained and contributed to an employee retirement fund for Roberts through the National Rural Electric Cooperative Association. As of January 1993, Roberts' retirement fund was valued at approximately $346,440. On January 27, 1993, Roberts opened an Individual Retirement Account with Edward D. Jones Co. ("the IRA"). He retired on February 1, 1993,[1] and he withdrew approximately $9,463 from the retirement fund, all of which was attributable to his own contributions to the fund. On February 11, 1993, Roberts transferred the balance of his retirement fund, approximately $336,977, to his IRA.
Roberts died in November 1997. At that time, his IRA was valued at $597,347. Of this amount, approximately $22,713 was attributable to Roberts' own contributions to the retirement fund. The balance represented his employer's contributions to the fund and appreciation thereon.
In June 1998, the estate filed an Ohio estate tax return which included in the gross estate only the portion of the IRA attributable to Roberts' own contributions to the retirement fund, and not the portion attributable to the employer's contributions, citing R.C. 5731.09. The parties agreed that the $22,713 attributable to Roberts' contributions to the retirement fund was "fully taxable" pursuant to R.C. 5731.09. The Tax Commissioner believed, however, that the entire value of the IRA should be included in the gross estate. When we refer to the IRA hereinafter, we refer to the disputed portion of the IRA.
The Tax Commissioner issued a notice adjusting the estate tax return to include the IRA, which resulted in an estate tax deficiency of $28,378.49. The Tax Commissioner also filed exceptions to Roberts' estate tax return in the probate court on July 28, 1998, asserting that the estate had misinterpreted R.C. 5731.09(A) concerning the taxability of the IRA. The estate filed exceptions to the Tax Commissioner's determination of the estate tax on November 4, 1998. The probate court decided the matter on the briefs of the parties and a joint stipulation of facts. On January 27, 2000, the probate court filed a decision in which it concluded that the IRA should not be included in Roberts' gross estate.
The Tax Commissioner raises four assignments of error on appeal. The first, third, and fourth assignments are interrelated and we will address them together in the interest of judicial economy.
 I. THE MIAMI COUNTY PROBATE COURT COMMITTED PREJUDICIAL ERROR BY FINDING THAT THE INDIVIDUAL RETIREMENT ACCOUNT OPENED BY ROBERT LAWRENCE ROBERTS WITH ROLLOVER FUNDS IS EXCEPTED FROM ESTATE TAX UNDER R.C. 5731.09, WHEN R.C. 5731.09 CONTAINS NO EXPRESS PROVISIONS RELATING TO INDIVIDUAL RETIREMENTS ACCOUNTS OR ROLLOVERS.
 III. TO THE EXTENT THAT THE MIAMI COUNTY PROBATE COURT RELIED ON FEDERAL TAX LAW PROVISIONS IN CONSTRUING THE MEANING OF R.C. 5731.09, SUCH RELIANCE BY THE COURT WAS PREJUDICIALLY ERRONEOUS BECAUSE THE FEDERAL PROVISIONS GOVERNING ESTATE TAXATION OF RETIREMENT ANNUITIES ARE COMPLETELY DIFFERENT FROM OHIO'S ESTATE TAX PROVISIONS RELATING TO ESTATE TAXATION OF RETIREMENT ANNUITIES AS SET FORTH IN R.C. 5731.09.
 IV. THE MIAMI COUNTY PROBATE COURT COMMITTED PREJUDICIAL ERROR BY MISAPPLYING THE WELL ESTABLISHED RULES OF STRICT CONSTRUCTION FOR TAX EXCEPTION STATUTES.
 The parties agree that, had Roberts' retirement funds remained in the retirement plan established by his employer, the funds contributed by the employer and the appreciation thereon would have been excluded from Roberts' gross estate upon his death pursuant to R.C. 5731.09(A). The Tax Commissioner contends, however, that when Roberts exercised his right to withdraw these funds from the employee retirement plan, he converted these funds to his own funds, with which he purchased an IRA. The Tax Commissioner argues that, as a result of this conversion, Roberts' employer cannot be said to have contributed any portion of the purchase price of the IRA, as the statute requires, and the entire amount of the IRA should be included in Roberts' gross estate. The estate contends that the monies continued to retain their character as employer contributions when Roberts rolled them into the new account because the source of the funds had not changed and thus that the funds should not be included in the gross estate.
R.C. 5731.09(A) provides:
 * * * [T]he value of the gross estate includes the value of an annuity or other payment receivable by a beneficiary by reason of surviving the decedent under any form of contract or agreement under which an annuity or similar payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another, for the decedent's life or for any period not ascertainable without reference to the decedent's death, or for any period which does not in fact end before the decedent's death.
 However, the value of the gross estate includes only such part of the value of the annuity or other payment receivable under the contract or agreement as is proportionate to that part of the purchase price of the contract or agreement contributed by the decedent. The value of the gross estate does not include the part of the value of the annuity or other payment as is proportionate to the part of the purchase price of the contract or agreement contributed by the employer or former employer of the decedent, whether to an employee's trust or fund forming part of a pension, annuity, retirement, bonus, or profit-sharing plan or otherwise, if the contributions were made by reason of the decedent's employment.
(Emphasis added.)
The Tax Commissioner contends that the probate court's determination that R.C. 5731.09(A) excluded Roberts' IRA from his gross estate was erroneous for two reasons. First, he argues that the full purchase price of the IRA was paid by Roberts, not by his employer, notwithstanding the fact that the funds used by Roberts had previously been held in an employee retirement plan. Second, he argues that the Ohio legislature intended to confer favorable tax treatment only to employer contributions made to an "employee's trust or fund forming part of a pension, annuity, retirement, bonus, or profit-sharing plan or otherwise," which he interprets to be limited to employee retirement plans maintained by the employer. He asserts that the phrase "or otherwise" at the end of the list of funds to which an employer might contribute does not mean thatany type of IRA could qualify as an employee retirement plan. The estate, on the other hand, asserts that the source of the funds, not their location upon an employee's death, determines whether the funds are to be included in the gross estate. The estate contends that Roberts exercised the same degree of ownership and control over the funds in the employee retirement plan as he did in the subsequently purchased IRA and that the language of R.C. 5731.09(A) does not compel the conclusion that the employer contributions ceased to be employer contributions when they were rolled over into an IRA that had been purchased by Roberts individually. The estate urges us to reject the Tax Commissioner's "unduly restrictive reading of the statute."
It is well settled that statutes relating to exemption or exception from taxation are to be strictly construed, and a person or entity claiming such exemption or exception must affirmatively establish its right thereto. Anheuser-Busch, Inc. v. Tracy (1999), 85 Ohio St.3d 514,515; Loctite Corp. v. Tracy (1994), 71 Ohio St.3d 401, 402; OhioChildren's Soc., Inc. v. Porterfield (1971), 26 Ohio St.2d 30, 32-33;National Tube Co. v. Glander (1952), 157 Ohio St. 407, paragraph two of the syllabus; Cash v. Brookshire United Methodist Church (1988),61 Ohio App.3d 576, 582. In other words, when statutory construction is required, statutory language granting a tax exemption must be construed most strongly against the exemption and in favor of taxation. OhioFerro-Alloys Corp. v. Donahue (1966), 7 Ohio St.2d 29, 31-32, citingNational Tube, 157 Ohio St. 407. When the legislature sees fit to encourage certain activities by the granting of a tax exemption, it is the duty of the courts to strictly construe the exemption provisions because exemption from taxation is in derogation of the rights of all taxpayers and effectively shifts a greater tax burden to the nonexempt.Ohio Children's Soc., 26 Ohio St.2d at 33.
In our view, R.C. 5731.09(A) is ambiguous. From the language of the statute, we are unable to determine whether the legislature intended to exclude from one's gross estate funds attributable to employer contributions only insofar as those funds remain in employee retirement funds maintained by the employer, or if it intended to exclude all funds traceable to employer contributions without regard to their location at the time of death. Because the language of the statute does not clearly support the estate's claim that the funds should have been excluded from the gross estate after they had been moved out of the retirement fund maintained by the employer, we conclude that the funds should be included in the gross estate for estate tax purposes.
We decline to draw any conclusions about the Ohio legislature's intent based on federal laws relating to the tax treatment of various types of IRAs, as the estate suggests, because both of the parties have acknowledged that there are notable distinctions between the federal and state provisions. Although the estate's argument that the exclusion of Roberts' IRA from his gross estate would be consistent with the treatment of certain other types of retirement funds has common sense appeal, the sensibility of this argument does not overcome the fact that the language of the statute does not lend clear support to this interpretation. Perhaps the statute could be read to permit the type of rollover effectuated by Roberts while still excluding the funds from the gross estate, but we would have to construe ambiguous language in the estate's favor to reach such a result. Clearly, we are not permitted to do so.
We also decline to adopt the estate's reasoning that, because the term "employee's trust or fund" is not defined, and because the legislature had used the term "employer death benefit plan" in prior versions of the statute, we should assume that these terms are distinguishable. The estate contends that "if [both terms] mean an employer established and maintained plan[,] then the legislature was guilty of extremely sloppy and careless drafting. A court cannot assume that." We are reluctant to conclude that the legislation was "sloppy and careless," but we cannot preclude the possibility that the legislature inadvertently, or for some reason unapparent to us, used different terms to refer to the same type of fund in different versions of the legislation. In our view, the estate asks us to read too much into the statute to affirmatively conclude that an "employer death benefit plan" as defined in previous statutes and an "employee's trust or fund" in the current statute are different types of retirement plans, especially in light of R.C. 5731.09's title: Annuities; Employer Death Benefit Plan. See State v. Glass
(1971), 27 Ohio App.2d 214, 216 (holding that titles of statutes are persuasive and entitled to some weight when determining their meaning.) See, also, 85 Ohio Jurisprudence 3d (1988) 202-204, Statutes, Sections 201 and 202.
We agree with the estate's argument that the phrase "or otherwise," as used in R.C. 5731.09(A)'s reference to the purchase price of the contract contributed by the employer or former employer of the decedent, "whether to an employee's trust or fund forming part of a pension, annuity, retirement, bonus, or profit-sharing plan or otherwise," means "or any alternate repository" of the funds that is akin to an annuity. The estate characterizes this non-inclusive list as a list of the funds in which an employee is permitted to maintain monies originally contributed by an employer so as to retain the preferential tax treatment of the funds upon his death. Another reasonable interpretation of this language, however, would be that the list delineates the various forms in which an employer might establish a retirement fund for its employees. The latter interpretation would not support the exclusion of Roberts' IRA from his estate and, again, we are required to construe ambiguities in favor of taxation.
The materials offered by the estate to establish the legislative history of R.C. 5731.09(A) merely restate the language of the statute purporting to exclude from taxation that portion of retirement funds attributable to an employer. They do not shed light on whether, to qualify for exclusion, the monies must remain in the retirement fund to which the employer contributed them. Thus, these materials do not further the estate's argument that the exclusion survives an employee's decision to roll the employer's contributions over into another account.
What the legislative history does reveal, however, is the legislature's desire to place private employees on a par with public employees with regard to the taxation of pension benefits upon the employee's death. Minutes from Ways Means Committee hearing on S.B. 224, 1/30/96. R.C.5731.09(B) provides that the value of a gross estate does not include the value of a pension or annuity accruing to any person under federal employment, including service in the armed forces, or the value of an annuity or other payment from the Ohio police and fire pension fund, the Ohio public safety officers death benefit fund, the state highway patrol retirement system, the public employees retirement system, the state teachers retirement system, or the school employees retirement system. This provision related to public employees predated the enactment of R.C. 5731.09(A), which purported to extend this tax benefit to private sector employees. R.C. 5731.09(B) contains no language to suggest that federal or state employees may retain the tax exclusion upon rolling the employers' retirement fund contributions over into accounts other than those specified. In fact, the language seems to contemplate payments made directly from these funds.
For the foregoing reasons, we conclude that the probate court erred in determining that the IRA should be excluded from Roberts' gross estate.
The first, third, and fourth assignments of error are sustained.
 II. THE MIAMI COUNTY PROBATE COURT COMMITTED PREJUDICIAL ERROR BY FINDING THAT THE INDIVIDUAL RETIREMENT ACCOUNT OPENED BY ROBERT LAWRENCE ROBERTS WITH ROLLOVER FUNDS IS EXCEPTED FROM ESTATE TAX UNDER R.C. 5731.09, BASED ON ITS RELIANCE ON INFORMAL, NON-JUDICIAL, NON-STATUTORY, NON-REGULATORY INTERNAL REVENUE SERVICE MATERIAL.
 The Tax Commissioner contends that, in reaching its decision, the probate court improperly relied upon an informal Internal Revenue Service ("IRS") publication, which is not an authoritative source of the federal tax law, erroneously suggested that Roberts had been required to remove the funds from his retirement plan, and ignored In re Estate of Sattler
(Mar. 20, 1985), Hamilton Cty. P.C. No. 825784, unreported. The estate apparently concedes that the probate court erroneously relied on the IRS publication but contends that such error was irrelevant because the court nonetheless reached the correct result. The estate also concedes that Roberts had not been required to remove his funds from the National Rural Electric Cooperative Association account established through his employer.The probate court's comments regarding Sattler, supra, are obscure and lend little, if any, insight into its rationale for rejecting the reasoning in that case.[2] The probate court, however, was not bound by Sattler, and thus it was not error for the probate court to refuse to follow the holding in that case insofar as it might have been relevant to this case.
The errors raised under this assignment of error do not, in themselves, provide a basis for reversing the probate court's decision.
The second assignment of error is overruled.
The judgment of the trial court will be reversed.
GRADY, P.J. and FAIN, J., concur.
[1] The parties' stipulation of facts and the trial court's decision refer to Roberts' "quasi-retirement" but do not elaborate on the meaning of this term. Whatever the distinction between retirement and quasi-retirement might be, it does not appear to be relevant to this appeal.
[2] The entirety of the trial court's discussion of Sattler was as follows.
Query, what about the estate of Charles G. Sattler 1985?
Query, was Sattler the reason for Senate Bill 224?
Enough said!
 We note that Senate Bill 224 was passed nearly eleven years after the Sattler decision.